DANIEL J. CARNESE *v.* ROBERT W. MIDDLETON ET AL.
(10422)

DUPONT, C. J., FOTI and FREEDMAN, Js.

Argued February 19—decision released May 12, 1992

*Abraham I. Gordon,* with whom were *Ronald D. Japha* and, on the brief, *Richard S. Scalo,* for the appellant (plaintiff).

*Andrew P. Nemiroff,* for the appellees (defendants).

DUPONT, C. J. This is an action for rent, interest and costs of collection pursuant to a lease agreement. The plaintiff alleges that these amounts are owed to him by the defendants[1] on the basis of their nonpayment of rent between November, 1985, and December, 1986. The trial court, *Leheny, J.,* dismissed this case on res judicata grounds. We reverse the judgment of dismissal of the trial court, in part.

This appeal is the fourth action instituted by the plaintiff against the defendants since 1985 arising out of their relationship of landlord and tenants, respectively. The plaintiff initially served a notice to quit on the defendants on July 29, 1985, and subsequently brought a summary process action. That action was withdrawn by the plaintiff on November 20, 1985.

---

[1] Also named as a defendant was Francoise G. Jiskoot. Both defendants are parties to this appeal.

On November 10, 1985, the plaintiff served a second notice to quit alleging nonpayment of rent, and subsequently filed a second summary process action. That action resulted in a "stipulation of compromise and settlement" (settlement agreement) that provided, inter alia, that the action was to be withdrawn, that the original written lease agreement between the parties was to be modified in certain respects but would otherwise be ratified by both parties, and that the defendants would pay "back rent in the approximate amount of $30,919.44" within thirty days of the execution of the settlement agreement. The action was withdrawn on November 24, 1986. The settlement agreement was signed by the defendants and forwarded to the plaintiff on February 3, 1987. The plaintiff did not sign the document.

On September 9, 1987, the plaintiff served a third notice to quit. This notice to quit alleged a nonpayment of rent and a violation of lease terms concerning the payment of rent and rent arrears. The plaintiff thereafter commenced a third summary process action. In that summary process action, the plaintiff claimed a nonpayment of rent for the months of November, 1985, through May, 1986, and July, September and October, 1986. The plaintiff also claimed that the defendant had violated the lease by failing to pay the $30,919.44 rent arrearage set forth in the compromise agreement. On March 31, 1989, the trial court, *Riefberg, J.,* rendered judgment in favor of the defendants in that third summary process action. In its memorandum of decision, the court found no nonpayment of rent during the relevant time period because "[t]he service of the [second] notice to quit . . . relieved the tenants of their obligation to pay 'rent' during the pendency of the prior summary process action from November, 1985, through November, 1986." The court also found that the settlement agreement constituted a new lease

agreement between the parties notwithstanding the plaintiff's failure or refusal to sign it. The court concluded, however, that the payment of back rent called for in the agreement was not required until the execution of the agreement by the plaintiff. Because the plaintiff had not executed the agreement, the court found no violation of the lease based on the nonpayment of arrears. The plaintiff did not appeal from that judgment, and the defendants paid the $30,919.44 rent arrearage to the plaintiff after the expiration of the appeal period in that case.

The action that is the subject of this appeal was commenced in December, 1987, and is not an action for summary process. In his complaint, the plaintiff alleged that "[t]he defendants failed to pay the rents due for the months of November 1, 1985, through and including the rent due for December 1, 1986."[2] On the basis of this allegation, the plaintiff sought back rent for this period of time and interest on that unpaid rent at the rate of 15 percent as provided in the lease agreement. The plaintiff also sought attorney's fees and costs incurred by him in the enforcement of the terms of the lease as a result of the default of the defendants during the aforementioned time period, as provided in the lease agreement.

The defendants' answer, filed on December 18, 1987, included a special defense, which was that the parties are bound by the settlement agreement. The defendants did not assert a special defense of res judicata or collateral estoppel in their answer.[3]

---

[2] Originally, the plaintiff proceeded by way of a two count complaint. Count one was based on a failure to pay rent due under the lease during the relevant time period. Count two was based on a failure to pay use and occupancy during the relevant time period. The plaintiff abandoned count two at the commencement of trial.

[3] Any defenses of res judicata and collateral estoppel arising out of the decision of the trial court, *Reifberg, J.,* were not available to the defend-

According to his trial memorandum filed before the commencement of the trial in this case, the plaintiff was the only witness expected to testify in his case-in-chief. After the plaintiff testified on direct examination and during cross-examination of him by the defendants, the defendants moved orally to dismiss the action on res judicata grounds pursuant to Practice Book § 302.[4] The trial court granted the motion and dismissed the matter as res judicata. This appeal followed.

I

Before addressing the plaintiff's arguments, we note as a preliminary matter that the resolution of this appeal turns on the application of the doctrine of collateral estoppel, not the doctrine of res judicata. "Issue preclusion or collateral estoppel can be distinguished from claim preclusion or res judicata. Issue preclusion is the doctrine that bars the relitigation of an issue of ultimate fact by the same parties upon a different cause of action. . . . By contrast, under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose." (Citation omitted; internal quotation marks

ants when their answer was filed in this case because the third summary process action had not yet been decided. The defendants, however, never amended their answer between the date of Judge Riefberg's decision, March 31, 1989, and the date of trial in this case, June 18, 1991. The defendants did file a trial memorandum before the commencement of trial in this case that set forth a claim of res judicata and collateral estoppel based on Judge Riefberg's decision.

[4] Practice Book § 302 provides in pertinent part: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment of dismissal, and the court may grant such motion if in its opinion the plaintiff has failed to make out a prima facie case. . . ."

omitted.) *Morganti, Inc.* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, 20 Conn. App. 67, 71–72, 563 A.2d 1055 (1989); see *Saporoso* v. *Aetna Life & Casualty Co.*, 221 Conn. 356, 365–68, 603 A.2d 1160 (1992).

A summary process action is designed solely to decide "the simple question of who is entitled to possession." *Yarbrough* v. *Demirjian*, 17 Conn. App. 1, 3, 549 A.2d 283, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988); *Urban* v. *Prims*, 35 Conn. Sup. 233, 236, 406 A.2d 11 (1979). A claim for damages is not properly raised in a summary process action. *Politzer* v. *Jeffrey, Inc.*, 133 Conn. 605, 607, 53 A.2d 201 (1947); *Webb* v. *Ambler*, 125 Conn. 543, 551–52, 7 A.2d 228 (1939). A summary process action, therefore, can have no res judicata effect in a subsequent action for damages between the same parties. Because this action is a claim for damages arising out of the relation of landlord and tenant that had to be and was pursued separately from the landlord's claim for possession, the doctrine of res judicata has no application.

Principles of collateral estoppel, on the other hand, can be applied to an action for damages based on a landlord tenant relationship that follows a summary process action. In determining whether a judgment of possession shall issue in a summary process action, a trial court must necessarily resolve the factual claims asserted in support of the claim for possession. See General Statutes § 47a-23 (a); *Rosa* v. *Cristina*, 135 Conn. 364, 365, 64 A.2d 680 (1949). The central issue, therefore, before the trial court and on appeal is the legal effect to be given to the specific ultimate factual findings made by Judge Riefberg in the third summary process action between the parties. This issue involves the application of the doctrine of collateral estoppel to the facts of this case.

## II

The plaintiff first claims that the trial court should not have considered the defendants' oral motion to dismiss because it was made prior to the plaintiff's resting his case in contravention of Practice Book § 302, and constituted a denial of his due process rights guaranteed by the fifth amendment to the United States constitution and by article first, §§ 8 and 10, of the Connecticut constitution. The plaintiff also claims that, even if the court could have properly acted on the defendants' motion to dismiss prior to the conclusion of the plaintiff's case-in-chief, the granting of the motion was improper. The plaintiff asserts that the evidence that he produced at trial supported his claim for relief and that he would have been able to make out a prima facie case for damages notwithstanding the factual determinations made by the trial court in the prior summary process action.

### A

Before addressing the plaintiff's argument that the trial court did not properly apply the doctrine of collateral estoppel to the facts of this case, we must first determine whether the trial court could properly consider the defense of collateral estoppel at all. The plaintiff argues that the defendants should not have been allowed to present, and the trial court could not consider, argument and evidence on the defense of collateral estoppel where it was not properly raised as a special defense by the defendants in their answer. The plaintiff did not raise this argument in the trial court despite the defendants' repeated assertions during the plaintiff's direct testimony that the prior decision of Judge Riefberg precluded the plaintiff's recovery in this action.

Collateral estoppel, like res judicata, must be specifically pleaded by a defendant as an affirmative defense. Practice Book § 164; *Chomko* v. *Patmon,* 20 Conn. App. 159, 162, 565 A.2d 250 (1989). There is, however, an exception to this general rule. The defendants' failure to file a special defense may be treated as waived where the plaintiff fails to make appropriate objection to the evidence and argument offered in support of that defense. See *Tedesco* v. *Stamford,* 215 Conn. 450, 462–63, 576 A.2d 1273 (1990); *Pepe* v. *New Britain,* 203 Conn. 281, 286, 524 A.2d 629 (1987). We conclude that the failure to file a special defense here was waived because the plaintiff did not object to the dismissal on that ground, even after the defendants claimed that collateral estoppel required a dismissal.

The question of whether the defendants could ever prevail on the defense of collateral estoppel at the conclusion of the plaintiff's case remains. A plaintiff does not usually have to overcome or rebut an affirmative defense during his or her case-in-chief for purposes of Practice Book § 302 and the establishment of a prima facie case. *Resnik* v. *Morganstern,* 100 Conn. 38, 42, 122 A. 910 (1923). We must now, therefore, consider whether Practice Book § 302 could have been utilized to dismiss the plaintiff's action even if the defendants had pleaded collateral estoppel as an affirmative defense.

In other contexts, the strict application of our rules of practice has yielded to a more common sense application when confronted with the implications of the doctrine of collateral estoppel. Thus, in *Convalescent Center of Bloomfield, Inc.* v. *Department of Income Maintenance,* 208 Conn. 187, 544 A.2d 604 (1988), the trial court's conclusion that collateral estoppel principles did not apply to the circumstances of the case was reviewed notwithstanding the fact that the trial court had ordered a remand for further administrative proceed-

ings, which is generally not regarded as a final judgment for purposes of appeal. Viewing the issue of collateral estoppel as ripe for review, the court noted that "[f]urther proceedings on the substantive merits of the plaintiffs' claim . . . cannot affect the rights of the parties with respect to collateral estoppel. Indeed, to postpone appellate review and to require further exhaustion of administrative remedies would defeat the very purpose that collateral estoppel is intended to serve. . . . If the defendant is correct that the plaintiffs are precluded from relitigating their entitlement to reimbursement, it would be unfair to require the defendant to expend its resources to defeat the plaintiffs' claim on the merits." Id., 194. Similar concerns underlie our disposition of *Chomko* v. *Patmon,* supra. There, notwithstanding the collateral estoppel effect to be given to a prior action between the parties, the plaintiff urged that we remand the case to permit the defendant to plead the affirmative defense of collateral estoppel properly and then to permit that defense to be litigated in the trial court using appropriate procedures. We declined to do so, noting that "under the suggested scenario the outcome of such a defense would be predetermined. Indeed, only if the trial court on such a remand were erroneously to blind itself to the prior course of the [prior action between the parties] could it decide otherwise. Thus, the plaintiff's argument would simply set judicial wheels unnecessarily spinning, only to remain at the same end of the road." Id., 163.

Applying the principles of *Convalescent Center of Bloomfield, Inc.* and *Chomko* to this case, we conclude that any procedural irregularity in the trial court's consideration of the defense of collateral estoppel at the § 302 stage of the proceedings could not harm the plaintiff. Here, the application of the principle of collateral estoppel as a defense, if it was a defense on which the defendants could ultimately prevail, would preclude the

plaintiff from proving his action. Thus, we hold that a trial court can properly entertain a § 302 motion to dismiss that raises collateral estoppel grounds.

Although we have reached the conclusion that it was proper in this case for the trial court to entertain a § 302 motion to dismiss based on collateral estoppel grounds, we must next decide whether the trial court's action on the motion prior to the conclusion of the plaintiff's case-in-chief was fatal to the court's consideration of the defendants' motion.

The essence of collateral estoppel is that there is no additional evidence that a party can produce that would require a different resolution of a disputed ultimate fact. See *Chomko* v. *Patmon,* supra. If the doctrine should be applied in this case, there would be no additional evidence that the plaintiff could produce that would circumvent the defense of collateral estoppel. We decide, therefore, that although the trial court should have waited until the conclusion of the plaintiff's primary case before acting on the defendants' motion, the timing of its action was not harmful to the plaintiff. We must now review the propriety and extent of the preclusive effect to be given to the judgment of the trial court in the prior, third summary process action.

## B

The plaintiff's claim for damages in the nature of back rent, interest, costs and attorney's fees was predicated entirely on his allegation that the defendants failed to pay rent due under the lease from November, 1985, through December, 1986.[5] Essential to the plaintiff's

---

[5] During the direct testimony of the plaintiff, the trial court asked the plaintiff's counsel: "Well, let me—let me say this. The relevant time frame in your complaint, whether res judicata or not, is 11-1-85 through 11-30-86, am I correct?" To which the plaintiff's counsel replied: "That's correct Your Honor, except that interest—we're making a claim that interest continued to run on the amount of money that came due at that period of time until

case, then, was proof that rent was due under the lease during the relevant months. His claims for interest and costs rest on proof of that fact. In the third summary process action, Judge Riefberg determined that the defendants had no obligation to pay rent during the months for which a nonpayment of rent was alleged, namely, November, 1985, through May, 1986, and July, September and October, 1986. On this issue of ultimate fact rested the legal conclusion that the plaintiff was not entitled to possession. In that prior action, Judge Riefberg also determined that the service of the second notice to quit "relieved the tenants of their obligation to pay 'rent' during the pendency of the second prior summary process action *from November 1985 through November 1986.*"[6] (Emphasis added.) Only if this latter finding of the trial court in the third summary process action is entitled to collateral estoppel effect will the plaintiff be unable to sustain his claim for rent due for the period November, 1985, through November, 1986, based on the preclusive effect of the prior judgment.

Where an issue of ultimate fact (1) was fully and fairly litigated in a prior action between the parties, (2) was actually decided by the court in that prior action, and (3) was necessary to the judgment rendered in the prior

the date hereof." The complaint alleged nonpayment of rent "through and including rent due for December 1, 1986." Neither party addressed the issue of whether the plaintiff was claiming rent for December, 1986. We cannot determine, on the basis of counsel's answer, whether the plaintiff abandoned his claim for December, 1986 rent.

[6] Judge Riefberg based his conclusion that the service of the second notice to quit relieved the defendants of their obligation to pay rent during the pendency of the second summary process action on *Welk* v. *Bidwell,* 136 Conn. 603, 609, 73 A.2d 295 (1950), *Rivera* v. *Santiago,* 4 Conn. App. 608, 610, 495 A.2d 1122 (1985), and *Bushnell Plaza Development Corporation* v. *Fazzano,* 38 Conn. Sup. 683, 686, 460 A.2d 1311 (1983), as well as our decision in *Bridgeport* v. *Barbour-Daniel Electronics, Inc.,* 16 Conn. App. 574, 548 A.2d 744 (en banc), cert. denied, 209 Conn. 826, 552 A.2d 432 (1988).

action, that factual determination may be given collateral estoppel effect in a subsequent action between the parties. *Aetna Casualty & Surety Co.* v. *Jones,* 220 Conn. 285, 296, 596 A.2d 414 (1991); *Gionfriddo* v. *Gartenhaus Cafe,* 15 Conn. App. 392, 402, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989). In the third summary process action between the parties, the plaintiff alleged that he was entitled to a judgment of possession because the defendants had failed to pay rent. In his complaint, as amended, the plaintiff did not allege a nonpayment of rent during the entire period of time at issue in this case. Rather, he alleged a nonpayment during fewer months than are covered in this case. While Judge Riefberg's decision in the third summary process action determined that there was no obligation to pay rent during all of the months at issue in this case, except for December, 1986,[7] it is apparent that only the months of November, 1985, through May, 1986, and July, September and October, 1986, were in issue in that summary process case. Whether the defendants were obligated to pay rent during June, August, November or December, 1986, was not before the court in the third summary process action. The court's finding about whether rent was due during the pendency of the second summary process action was beyond the scope of the issue to be decided in the third summary process action.

Because the issue of whether rent was due for June, August, November and December of 1986 was not necessary to the judgment in the third summary process action, the principles of collateral estoppel will not bar subsequent litigation of the issue of whether rent was due during those four months of 1986. " '[I]f issues are determined but the judgment is not dependent upon the determinations, relitigation on those issues in a subsequent action between the parties is not pre-

---

[7] See footnote 5, supra.

cluded. . . .' " *Hansted* v. *Safeco Ins. Co. of America,* 19 Conn. App. 515, 519, 562 A.2d 1148, cert. denied, 212 Conn. 819, 565 A.2d 540 (1989); Restatement (Second), Judgments § 27, comment, p. 258.

Consequently, only Judge Riefberg's conclusion in the third summary process action that rent was not due during the months of November, 1985, through May, 1986, and July, September and October, 1986, was properly entitled to collateral estoppel effect in the present case.[8] These conclusions bar relitigation of whether rent was due during those months in the present action for damages for the same months. This is so because the issue of the payment of rent for the months in question was essential to and decided in the summary process action.

No prior judicial determination of preclusive effect has been rendered, however, with respect to the alleged failure to pay rent during the months of June, August, November and December, 1986. The doctrine of collateral estoppel is a limited one. Collateral estoppel can be applied only to bar relitigation of facts that were formally put in issue and ultimately determined by a valid, final judgment. *In re Juvenile Appeal (83-DE),* 190 Conn. 310, 316–17, 460 A.2d 1277 (1983). To conclude otherwise would improperly infringe on a party's right to seek a judicial determination of disputed issues of fact. The doctrine of collateral estoppel, therefore,

---

[8] The fact that the lease agreement was revived by the subsequent conduct of the parties in settling and withdrawing the second summary process action; see *Bridgeport* v. *Barbour-Daniel Electronics, Inc.,* 16 Conn. App. 574, 595 n.5, 548 A.2d 744 (1988) *(Borden, J.,* dissenting); *Housing Authority* v. *Hird,* 13 Conn. App. 150, 156–57, 535 A.2d 377, cert. denied, 209 Conn. 825, 522 A.2d 433 (1988); does not, as claimed by the plaintiff, undo the fact that it was terminated in November, 1985. See footnote 6, supra, and cases cited therein. While our cases recognize that the subsequent conduct of a landlord and tenant can revive or reinstate a lease agreement, they do not suggest that such conduct has any such retroactive effect on the preceding legal relationship between the parties.

did not prevent the plaintiff from making out a prima facie case that rent was due in the months of June, August, November and December, 1986, along with his claim for interest, costs and attorney's fees.

The trial court prevented the plaintiff from making out a prima facie case as to some of his allegations and claims for relief by prematurely rendering a judgment of dismissal before the plaintiff had presented his entire case. We must, therefore, set aside its judgment insofar as it concerns rent due for June, August, November and December, 1986, and remand for a new trial to determine whether rent was due for those months, and, if so, whether interest was due, and to determine whether the plaintiff was due attorney's fees incurred to enforce his lease. These issues have not been litigated and their resolution is not barred by the application of the doctrine of collateral estoppel.

The judgment of dismissal as to rent claimed to be due for November through May, 1986, and July, September and October, 1986, is affirmed. In all other respects, the judgment of dismissal is reversed and the case is remanded for a new trial as limited by this opinion.

In this opinion the other judges concurred.