[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ARTICULATION
On April 7, 1998, this court issued a memorandum of decision on the City of Milford's motion for summary judgment on the Andresakises' counterclaim, granting the motion as to the first count of the counterclaim and denying it as to the second count. See City of Milford v. Andresakis, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 047124 (April 7, 1998) (Curran, J.). The City filed a motion for articulation of the court's decision on May 7, 1998. The motion was denied by the court, Curran, J., on the same date. On May 15, 1998, the City filed a motion for review of the denial of the motion for articulation with the Connecticut Appellate Court. By order dated July 1, 1998, the Appellate Court granted the City's motion to articulate and ordered this court "to articulate its decision on the issue of res judicata." The facts pertinent to the court's CT Page 12081 articulation of its April 7, 1998, memorandum are as follows:
The City has filed a foreclosure action against Anthony and Gloria Andresakis for unpaid property taxes and a flood and erosion assessment lien allegedly owed on real estate in Milford, Connecticut. The Andresakises have filed a counterclaim against the City. The second count of the counterclaim alleges negligent misrepresentation against the City involving the stipulation of dismissal of an action previously commenced by the Andresakises in federal district court.
In the federal action, on February 17, 1995, the City and the Andresakises entered into a stipulation of dismissal of certain claims made by the Andresakises in the United States District Court for the District of Connecticut against the City, for the sum of $7,700.00.[1] The Andresakises also signed a general release of "all claims stated or arising out of" the federal action, including claims "arising out of and/or related to" the federal action "in connection with the constitutionality and availability of certain tax abatements and the construction and maintenance of a flood, shore and erosion control revetment and seawall." See Andresakis v. City of Milford, Recommended Ruling on Pending Motions, Docket No. 93CV00098 (March 22, 1996) (Martinez, U.S.M.J.) (approved and adopted by U.S. District Court, September 26, 1996, Chatigny, U.S.D.J.), aff'd, Summary Order, Docket No. 96-9467 (2d Cir. July 9, 1997) (Miner, J., McLaughlin, J., Nickerson, J.). Subsequently, the Andresakises filed in federal court motions to compel the City to fulfill the terms of the stipulation of dismissal and to restore certain of the their claims to the federal docket. See Andresakis v. City of Milford,supra, Recommended Ruling on Pending Motions, Docket No. 93CV00098, pp. 1, 9. In their motion to restore the claims, the Andresakises argued that they were entitled to litigate the claims that were extinguished by the stipulation of dismissal and general release because, inter alia, "the [Andresakises] thought the settlement agreement required the City to dismiss the foreclosure action" presently before the superior court. Id., p. 9. The federal magistrate judge characterized this argument as an attack on the stipulation of dismissal under Rule 60(b) of the Federal Rules of Civil Procedure, which pertains to relief from judgments. See id. Rule 60(b) provides, in pertinent part: "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) CT Page 12082 fraud . . ., misrepresentation, or other misconduct of an adverse party . . ." The court analyzed the Andresakises' claim under Rule 60(b)(1) and held that the stipulation of dismissal should not be vacated because any "mistake" involved was not mutual and did not "result from an erroneous impression of fact or an unexpected and unfavorable occurrence [making] the mistake a matter . . . of unavoidability." Andresakis v. City of Milford,supra, Recommended Ruling on Pending Motions, Docket No. 93CV00098, pp. 10-11. Further, the court held generally that the testimony of Mr. Andresakis "[satisfied] the court that the Andresakises did not harbor a mistaken belief as to the consequences that the dismissal . . . would have on the state foreclosure action"; id., p. 11; and "understood the effect of settlement." Id., p. 11 n. 9.
The magistrate judge's recommended ruling was approved and adopted by the federal District Court for the District of Connecticut, Chatigny, J., on September 26, 1996. The Andresakises appealed the ruling to the United States Court of Appeals for the Second Circuit. The court of appeals affirmed the ruling, finding that it was not error for the district court to characterize the motion to restore the constitutional claims to the docket as a Rule 60(b) motion for relief from judgment, and that pursuant to Rule 60(b) the district court did not abuse its discretion in denying the Andresakises' motion. SeeAndresakis v. City of Milford, supra, Summary Order, Docket No. 96-9467, pp. 4-5.
In their counterclaim in the present case, the Andresakises allege that the stipulation of dismissal entered in federal court was based on material representations made by the City that the amount of interest owed on the Andresakises' delinquency in payment of property taxes and on the special assessment for the flood and erosion control project did not exceed $7,700.00. The Andresakises further allege that this representation was inaccurate, and that if they had known the actual amount of the interest owed they would not have settled the federal action for $7,700.00. The Andresakises seek, inter alia, damages and costs.
The City filed a motion for summary judgment on count two of the Andresakises' counterclaim on the basis that the federal courts previously considered the Andresakises' claim of mistake on the motion for relief of judgment and rejected it. Thus, according to the City, the Andresakises' alternative "theory" of negligent misrepresentation is barred by the doctrine of res judicata because the federal courts' ruling on the motion for relief from judgment CT Page 12083 extinguished any claims attacking the settlement.
"Practice book § 384 [now Practice Book (1998 Rev.) § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) Thompson Peck, Inc. v. Division Drywall, Inc.,241 Conn. 370, 374, 696 A.2d 326 (1997). "The party moving for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) Spencer v.Good Earth Restaurant Corp. , 164 Conn. 194, 197-98, 319 A.2d 403
(1972); see Fogarty v. Rashaw, 193 Conn. 442, 445, 476 A.2d 582
(1984). "The test . . . is resolved by applying to the established facts the same criteria as used in determining whether a party would be entitled to a directed verdict on the same facts . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party . . . In Connecticut, a directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Citations omitted; internal quotation marks omitted.) Spencer v.Good Earth Restaurant Corp., supra, 164 Conn. 198. "`"Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment [is] the appropriate method for resolving a claim of res judicata."' Jackson v. R.G. Whipple,Inc., 225 Conn. 705, 712, 627 A.2d 374 (1993), quoting Zizka v.Water Pollution Control Authority, 195 Conn. 682, 687,490 A.2d 509 (1985)." City of Milford v. Andresakis, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 047124 (October 31, 1995) (Curran, J.).
"The . . . doctrines [of collateral estoppel and res judicata] protect the finality of judicial determinations, conserve the time of the court and prevent wasteful CT Page 12084 relitigation . . . Res judicata, or claim preclusion, is distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim." (Citations omitted; internal quotation marks omitted.) Mazziotti v. Allstate Insurance Co.,240 Conn. 799, 812, 695 A.2d 1010 (1997). "A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; internal quotation marks omitted.)Connecticut Natural Gas Corp. v. Miller, 239 Conn. 313, 322,684 A.2d 1173 (1996). "[A] decision whether to apply the doctrine of res judicata to claims that have not actually been litigated should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the [defendants] in the vindication of a just claim . . . Put otherwise, the principle of res judicata is based on the public policy that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 322-23. "Both issue and claim preclusion express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Internal quotation marks omitted.)Mazziotti v. Allstate Insurance Co., supra, 240 Conn. 812.
In its prior ruling, this court determined that "the federal courts did not consider the Andresakises' claim of misrepresentation in its prior rulings," and denied the City's motion for summary judgment as to count two because "[t]his does not implicate . . . a claim that has already been decided on the merits (res judicata)." City of Milford v. Andresakis, supra, Superior Court, Docket No. 047124. The City argues in its motion to articulate that the issue is not whether the federal court in fact considered the Andresakises' claim of misrepresentation but, rather, whether the Andresakises could have raised the claim of misrepresentation in the federal proceedings. According to the City, the Andresakises could have raised misrepresentation as a basis for their Rule 60(b) motion to vacate and, therefore, a cause of action for misrepresentation in the present case is CT Page 12085 barred by the doctrine of res judicata. Although the City is correct that the Andresakises could have raised such an argument in the federal proceedings in support of the motion to reinstate their claims to the federal docket, the City is incorrect in its conclusion that the Andresakises' failure to raise this argument now precludes them from bringing an affirmative cause of action for negligent misrepresentation.
In applying the test for res judicata, the court should consider whether "[t]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action rose. What factual grouping constitutes a `transaction,' and what groupings constitute a `series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage . . . In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." (Citations omitted; internal quotation marks omitted.) Delahunty v. Massachusetts Mutual LifeIns. Co., 236 Conn. 582, 590, 674 A.2d 1290 (1996). Indeed, "the mere explication of the doctrine of claim preclusion does not resolve all difficulties which may appear at the point of application. As was stated long ago, the law of estoppel by judgment is well settled, the only difficulty being in its application to the facts . . . The difficulty has always been in determining what matters are precluded by the former adjudication . . . In applying the rule of claim preclusion, the critical question is how broad a definition to give to the term `same claim' or `cause of action.' The broader the definition, the broader the scope of preclusion." (Citation omitted; internal quotation marks omitted.) Id., 590-91. "[A] decision whether to apply the doctrine of res judicata to claims that have not actually been litigated should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. We have stated that res judicata should be applied as necessary to promote its underlying purposes. These purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; CT Page 12086 (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation . . . The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies . . . [W]here a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding. But the scope of matters precluded necessarily depends on what has occurred in the former adjudication." (Citation omitted; internal quotation marks omitted.) Id., 591-92; see also Mazziotti v. Allstate InsuranceCo., supra, 240 Conn. 812; Connecticut Natural Gas Corp. v.Miller, supra, 239 Conn. 322-23.
In Delahunty v. Massachusetts Mutual Life Ins. Co., supra, the court considered whether the doctrine of res judicata should be applied to preclude a party in a prior marriage dissolution proceeding from bringing a postdissolution action claiming damages for misconduct that had occurred during the marriage. The court concluded that "the policy considerations commonly advanced to justify the doctrine of res judicata are not compelling in this context and . . . it would be an inappropriate application of the principles of res judicata to require tort actions based on claims arising between married persons to be litigated in a dissolution proceeding. Furthermore, because there are significant differences between a tort action and a dissolution action, the maintenance of a separate tort action will not subject the courts and the defendant to the type of piecemeal litigation that the doctrine was intended to prevent."Delahunty v. Massachusetts Mutual Life Ins. Co., supra,236 Conn. 592. The court went on to discuss the distinctions between a tort action and an action for dissolution: "A tort action, the purpose of which is to redress a legal wrong by an award of damages, is not based on the same underlying claim as an action for dissolution, the purpose of which is to sever the marital relationship, to fix the rights of the parties with respect to alimony and child support, and to divide the marital estate. CT Page 12087 Although in a dissolution action, the trial court must consider the conduct of the parties, the judgment in a dissolution action does not provide direct compensation as such to a party for injuries suffered during the marriage . . . Tort actions and dissolution, actions lack the duplication that the doctrine of res judicata was aimed at preventing. Additionally, a dissolution action is equitable in nature and requires a trial to the court, while a civil trial of a claim for damages based upon conduct occurring during the marriage is legal in nature, may involve the right to punitive damages and may, as in this case, involve the right to a jury trial. Furthermore, a dissolution action generally will involve few witnesses, while a civil action may involve numerous witnesses as well as other parties, such as insurance carriers." Id., 592-93.
Although the Rule 60(b) proceeding in the present case is different from a marriage dissolution action, the principles for disallowing the application of res judicata in the present case are identical to those expressed in Delahunty. As indicated inDelahunty, the purpose of a tort action is to redress a legal wrong by an award of damages. In the present case, the tort action for negligent misrepresentation is not based on the same underlying "claim" as a Rule 60(b) motion for relief from judgment. The "claim" in a Rule 60(b) motion is that a final judgment has been rendered erroneously and should be vacated. The claim on an affirmative cause of action for the tort of negligent misrepresentation is that the claimant has allegedly suffered some legally cognizable and compensable injury due to the negligent conduct of the defendant. Like the court in a dissolution action, the federal district court on a Rule 60(b) motion may consider the conduct of the allegedly offending party. However, the proceedings upon a Rule 60(b) motion cannot provide direct compensation to a party for injuries suffered as a result of allegedly tortious conduct.
Like the dissolution action, a Rule 60(b) motion is equitable in nature. See, e.g., United States v. SouthwestNational Bank, 598 F.2d 600, 603 (Temp.Emerg.Ct.App. 1979). Moreover, such a motion is addressed to the sound discretion of the trial judge. See Triplett v. Azordegan, 478 F. Sup. 872, 876
(N.D. Iowa 1977); Kender v. General Expressways, Ltd.,34 F.R.D. 237, 239 n. 4 (E.D. Pa. 1963). Conversely, a claim for damages based upon negligent misrepresentation is legal in nature and may involve the right to a jury trial. Such a claim would require proof by a preponderance of the evidence. See Beverly HillsCT Page 12088Concepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 369864 (January 27, 1997) (Hale, S.T.R.), citing Regov. Connecticut Ins. Placement Facility, 22 Conn. App. 428, 430,577 A.2d 1105 (1990). Accordingly, a cause of action in tort for misrepresentation and a Rule 60(b) motion to vacate a judgment lack the duplication that the doctrine of res judicata was intended to prevent.
In addition, the tort action for misrepresentation sought in the present case was not "fully and fairly litigated" in the federal proceeding on the motion for relief from judgment, nor could it have been. A cause of action for the tort of negligent misrepresentation and a motion for relief from judgment differ in nature, elements of the claim and potential remedy, and therefore the present claim cannot raise the same "claim" raised in the federal proceedings. See, e.g., Senna v. Gottesdiener, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 532694 (March 29, 1996) (Hennessey, J.) (16 CONN. L. RPTR. 390) (finding that the granting of sanctions against an attorney in a previous action does not bar a subsequent action for vexatious litigation against the same attorney under the doctrine of res judicata).
Rule 60(b) in no way provides for damages or other relief in an affirmative claim based on tort principles, and differs in nature, elements of the claim and potential remedy from the tort of misrepresentation. This basis for disallowing res judicata to preclude an affirmative claim for damages has been recognized in the context of a prior marital dissolution action, as inDelahunty, as well as in other contexts. For example, a summary process proceeding has no preclusive effect upon a subsequent action for damages between the same parties arising out of the landlord and tenant relationship. See Carnese v. Middleton,27 Conn. App. 530, 535, 608 A.2d 700 (1992). This is because the summary process action is designed solely to determine the question of who is entitled to possession of the property, and does not contemplate damages. Id. In addition, a party intervening in a prior administrative enforcement action against a polluter under the Environmental Protection Act, which provides for injunctive action, is not precluded by res judicata from seeking a private claim for damages in a subsequent suit because there can be no award for damages to the intervenor in the administrative enforcement action. See Connecticut Water Co. v.Beausoleil, 204 Conn. 38, 43-51, 526 A.2d 1329 (1987). Similarly CT Page 12089 here, the Andresakises were unable to litigate a cause of action for damages for negligent misrepresentation upon a Rule 60(b) motion for relief from judgment.
The City argues that because Rule 60(b) provides that the federal court may relieve a party from a final judgment for, inter alia, fraud, "the Andresakises could have raised their claim of negligent misrepresentation under Rule 60(b)," and "[t]hat they did not do so renders the federal court's judgment final with respect to the claim." Certainly if the Andresakises were attempting in the present action to have the stipulation of dismissal vacated, the fact that the Andresakises could have asserted misrepresentation in the Rule 60(b) proceeding might have preclusive effect. Misrepresentation is clearly a basis upon which the federal courts can, in their discretion, grant relief from judgments. However, the Andresakises seek in the present case affirmative relief for damages they allegedly sustained as a result of the City's tortious conduct. The City has provided this court with no authority demonstrating that such an affirmative claim for damages could have been made in the Rule 60(b) proceeding. Even if the Andresakises had raised misrepresentation as a basis for its motion to restore its claims to the federal docket, merely asserting such misrepresentation cannot constitute full and fair litigation of a cause of action in tort for negligent misrepresentation. Precluding the Andresakises from litigating their claim for negligent misrepresentation against the City would not promote the purposes underlying the doctrine of res judicata.
The res judicata issues raised by the City's arguments in both its motion for summary judgment and motion for articulation are difficult because of the method in which they are presented and because of the unique facts of this case. The thrust of the City's argument is that the Andresakises could have raised a claim for negligent misrepresentation in the proceedings on the Rule 60(b) motion for relief from judgment. The foregoing discussion demonstrates that this argument is without merit since the Andresakises could not have brought, nor fully and fairly litigated, a cause of action in tort for negligent misrepresentation in the federal proceeding on the motion for relief from judgment.
If the Andresakises sought, however, in the present case to revisit the Rule 60(b) judgment by asking this court to directly vacate the judgment, or to render judgment on a claim CT Page 12090 specifically precluded by the stipulation of dismissal or the release, such as a claim against the City for negligent performance of the work done on the sea wall or a claim for damages for injury to property due to the City's breach of contract or negligence, the court might be precluded by operation of the doctrine of res judicata from determining those claims. In the present case, the court is presented with a claim related to the federal court settlement proceedings, but not specifically barred by such proceedings. Alleged misrepresentation by the City in the federal proceedings, and an ensuing stipulation of dismissal and release of claims based, in part, upon such alleged misrepresentation logically cannot be said to be encompassed within the contemplation of the stipulation of dismissal and release themselves.
In any event, the City does not advance the argument that the present claim is barred by the terms of the release, or that the claim is barred because it is a claim that could have been raised in the original action but was extinguished by virtue of the stipulation of dismissal. Rather, the City seeks summary judgment on the basis that the claim in the present case could have been brought in the federal court in support of the Rule 60(b) motion for relief from judgment and thus is now barred by res judicata — a basis that is without merit.
For the foregoing reasons, the City's motion for summary judgment as to count two of the Andresakises' counterclaim is hereby denied, as the City has not met its burden of showing the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, would entitle it to judgment as a matter of law.
The Court
By Curran, J.