[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This action comes before the court on a motion for summary judgment filed by the defendant, Allstate Insurance Company (Allstate), against the plaintiff, Susan Carnein. Carnein's revised complaint seeks recovery from Allstate under the uninsured/underinsured motorist provision in her automobile insurance policy with Allstate. Allstate moves for judgment on the ground that Carnein's claim is barred by her failure to comply with the consent clause of her insurance contract and her failure to exhaust all available insurance pursuant to General Statutes § 38a-336 (b). For the reasons stated below, the court grants Allstate's motion for summary judgment.
 BACKGROUND
The pleadings, affidavits and other documentary evidence reveal the following relevant procedural history and facts. Carnein alleges that on May 21, 1996, she was traveling south on Route 5 in the town of Newington, Connecticut. (See Amended complaint, dated September 30, 1998 [Amended complaint], ¶ 4.) The vehicle in front of her was driven by Frederick Pasternak. (See Amended complaint, ¶ 5.) Pasternak stopped his vehicle as he approached a blinking yellow light at the intersection of Richard Street and Route 5; (see amended complaint, ¶ 5); because a 1987 Mac truck operated by Michael Longo for Longo Trucking, Inc. (Longo Trucking) drove through a flashing red light at the same intersection and crossed Route 5 in front of Pasternak's vehicle. (See Allstate's memorandum in support of motion for summary judgment [Allstate's memo], Exhibit A, police report.) Carnein stopped her vehicle. (Amended complaint, ¶ 5.) Immediately thereafter, a car driven by Fernando Gomez collided with the rear-end of Carnein's vehicle forcing Carnein's vehicle into the rear-end of Pasternak's vehicle. (See Amended complaint, ¶ 7.)
As a result of the collision, Pasternak filed a four count complaint on July 22, 1997, against Longo and Longo Trucking for negligence (count one), Carnein for negligence (count two), Gomez for negligence (count three) and Longo for recklessness (count four). At trial, the jury determined that Longo was one hundred percent liable for the accident and CT Page 3563 that Gomez, Carnein and Longo Trucking were not at fault. See Pasternakv. Longo, Superior Court, judicial district of New Britain, Docket No. 482117 (October 6, 1999, Wollenberg, J.).
In consideration of payment of $2400, on May 8, 1998, Carnein signed a general release of any claims arising out of the subject accident against Longo, Longo Trucking and Peerless Insurance Company (Peerless), the insurance company covering Longo and Longo Trucking (the Longo settlement). On July 31, 1998, Carnein filed a complaint against Allstate followed by the amended complaint on October 7, 1998, seeking recovery under the uninsured motorist provision in her automobile insurance policy for personal injuries she allegedly sustained in the accident. Carnein alleges that her injuries were caused by the negligence of Gomez, an uninsured operator.
On October 29, 1999, Allstate filed a motion for summary judgment on the grounds that Carnein's claim is barred pursuant to the consent clause of the insurance contract and General Statutes § 38a-336. The motion was accompanied by a memorandum in support, three affidavits, a police report and the general release signed by Carnein.[1] Carnein filed a timely objection. The court heard oral argument at short calendar on November 20, 2000, and now issues this memorandum of decision.
 STANDARD OF REVIEW
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted.) Miles v. Foley, 253 Conn. 381, 386, 752 A.2d 503
(2000). "A `material' fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammerv. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699
(1990). "[T]he court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v.Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "The test is whether a party would be entitled to a directed verdict on the same facts."Sherwood v. Danbury Hospital, 252 Conn. 193, 201, 746 A.2d 730 (2000). "Because . . . collateral estoppel, if raised, may be dispositive of a CT Page 3564 claim, summary judgment [is] the appropriate method for resolving a claim of [collateral estoppel]." Jackson v. R.G. Whipple, Inc., 225 Conn. 705,712, 627 A.2d 374 (1993).
 DISCUSSION
In its memorandum in support of summary judgment, Allstate makes the following arguments: (1) the doctrine of collateral estoppel prevents Carnein from relitigating the issue of causation because, in the first proceeding, the jury determined that Longo was the sole cause of the accident in which Carnein sustained injury; (2) Carnein's claim is barred by General Statutes § 38a-336 (b)[2] because she failed to exhaust the limits of Longo's liability insurance policy applicable at the time of the accident; and (3) Carnein breached her insurance contract when she failed to obtain Allstate's consent before settling with Longo, Longo Trucking and Peerless.
In opposition, Carnein argues that Allstate's arguments are all based on the theory of collateral estoppel which does not apply in this case. Finally, although Carnein does not dispute that the insurance contract contains a consent to settle clause, she argues that the clause refers only to settlement with an alleged uninsured or underinsured tortfeasor. Because Carnein did not settle with the alleged uninsured tortfeasor in the present case, she contends that Allstate's argument is baseless.
 I. Collateral Estoppel
Allstate argues that Carnein is estopped from asserting that her injuries were caused by Gomez because in prior litigation Longo was found one hundred percent liable. Allstate argues, therefore, that Carnein may only recover uninsured motorist benefits if she exhausted Longo's policy of insurance. In opposition, Carnein argues that the issues to be resolved in the present case are different from those in the prior action and, although she and Gomez were parties to the prior action, Allstate was not a party and has no privity with Gomez.
"Because . . . collateral estoppel, when properly raised and established, will preclude [an] . . . issue. . . . the defendant's invocation of this principle must first be resolved." Mazzioti v.Allstate Ins. Co., 240 Conn. 799, 811, 695 A.2d 1010 (1997). The court begins with the threshold issue of whether the defendant's argument is properly before the court. "Collateral estoppel . . . must be specifically pleaded by a defendant as an affirmative defense." Carnese v. Middletown,27 Conn. App. 530, 537, 608 A.2d 700 (1992); see also Practice Book § 10-50. "The defendant's failure to file a special defense may be treated as waived where the plaintiff fails to make appropriate objection CT Page 3565 to the evidence and argument offered in support of that defense." (Internal quotation marks omitted.) Carnese v. Middletown, supra, 537.; see also Joe's Pizza, Inc. v. Aetna Life and Casualty Co., 236 Conn. 863,867 n. 8, 675 A.2d 441 (1996) (in the absence of plaintiff's objection to the trial court or a showing of prejudice, the court entertained the defendant's res judicata argument after failing to plead it as a special defense). Although Allstate did not specifically plead collateral estoppel as a special defense, the court finds that Allstate's failure was waived because Carnein did not object to the motion on that ground. See Carnese v. Middletown, supra, 537. Accordingly, the court will address the defendant's collateral estoppel argument.
"[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." (Internal quotation marks omitted.) Dowling v. FinleyAssociates, Inc., 248 Conn. 364, 373-74, 727 A.2d 1245 (1999). "Furthermore, to invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." (Internal quotation marks omitted.) Mazzioti v.Allstate Ins. Co., supra, 240 Conn. 812.
The first "[k]ey consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." Aetna Casualty Surety Co. v. Jones, 220 Conn. 285, 304,596 A.2d 414 (1991). "In determining whether privity exists, [our Supreme Court] employ[s] an analysis that focuses on the functional relationships of the parties. . . . [Privity] is, in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one [who is a party] with another [who is not a party] as to represent the same legal rights so as to justify preclusion." Mazzioti v. Allstate Ins. Co., supra,240 Conn. 814.
The substance of the first trial was an action in tort; specifically, the issue addressed was whether Longo, Longo Trucking, Gomez or Carnein were liable to Pasternak for the negligent or reckless operation of their motor vehicles. See Pasternak v. Longo, supra, Superior Court, Docket No. 482117. In contrast, the present action is brought to recover uninsured motorist benefits under an automobile insurance policy and represents an action in contract. See Mazzioti v. Allstate Ins. Co., supra, 240 Conn. 817. "Payments made pursuant to an uninsured motorist policy are paid on behalf of the insured, and not on behalf of the financially irresponsible motorist who has caused the insured's injuries. . . . [Allstate] is not the alter ego of [Gomez] and, although its contractual liability is premised in part on the contingency of CT Page 3566 [Gomez's] liability, they do not share the same legal right. The commonality of interest in proving or disproving the same facts is not enough to establish privity." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id. Accordingly, there is no privity between Allstate and the alleged uninsured tortfeasor, Gomez.[3]
Furthermore, to ensure that the application of collateral estoppel is not inequitable, the court must consider the requirement that the interests of the party to be precluded, Carnein, were sufficiently represented in the prior action. See Mazzioti v. Allstate Ins. Co., supra, 240 Conn. 818. In essence, "the court must determine what facts were necessarily determined in the first [proceeding] and then assess whether [Carnein] is attempting to relitigate those facts in the second proceeding." (Internal quotation marks omitted.) Aetna Casualty Surety,Co. v. Jones, supra, 220 Conn. 297.
In the prior proceeding, Pasternak v. Longo, supra, Superior Court, Docket No. 482117, Carnein and Gomez were co-defendants who successfully argued that they were not responsible for Pasternak's injuries. The facts and issues necessarily litigated in that proceeding were the cause of Pasternak's injuries and the extent of his damages. The action did not involve a claim by Carnein concerning her own injuries or who was responsible for them, nor were such issues determined by the jury.
In contrast, the purpose of the present action is to determine whether Carnein is entitled to certain benefits under her insurance contract with Allstate for the injuries she suffered as a result of the accident. The facts and issues necessary to this litigation will likely include responsibility for Carnein's injuries, the extent of her damages and whether Allstate is contractually obligated to pay for those damages under her uninsured motorist coverage. Under these circumstances, although some of the facts litigated in both proceedings may be the same, the present action implicates different factual and legal considerations which are outside of the matters determined in the prior proceeding.
Moreover, it is well established that "[a] judgment against co-defendants creates no liability between them if none before existed. Parties to a judgment are not bound by it in a subsequent controversy between each other, unless they were adversary parties in the original action. . . . As between the several defendants therein a joint judgment establishes nothing but their joint liability to the plaintiff. . . . [T]he rule . . . is that a judgment in favor of the plaintiff in an action against two or more defendants is not res judicata or conclusive of the rights and liabilities of the defendants inter se in a subsequent action between them, unless those rights and liabilities were expressly CT Page 3567 put in issue in the first action, by cross complaint or other adversary pleadings, and determined by the judgment in the first action." (Internal quotation marks omitted.) Malerba v. Cessna Aircraft Co., 210 Conn. 189,197-98, 554 A.2d 287 (1989). In Malerba v. Cessna Aircraft Co., supra, the court applied this rule in the indemnification context and reasoned that "the indemnity claim [was] not finally determined by the first party judgment [because] indemnification implicates different factual and legal considerations which may be outside of the matters determined in the first party plaintiff's claim." Id., 198.
The same can be said in the present context. Carnein and Gomez were not adversary parties in the first action and the rights and liabilities of the two parties were not at issue or litigated pursuant to adversary pleadings. Additionally, Carnein's present action against Allstate implicates different factual and legal considerations which are outside the matters determined in the first action.
Pursuant to the foregoing, the court finds that the doctrine of collateral estoppel does not apply in the present case. As a result, the issue of Gomez's liability to Carnein remains unlitigated.
 II. Consent Clause
Allstate argues that by settling with Longo, Longo Trucking and Peerless without Allstate's consent, Carnein breached the consent clause of her insurance contract. Therefore, Allstate argues it is under no obligation to pay uninsured motorist benefits for any of Carnein's injuries. Carnein argues that the consent to settle clause only concerns settlement with the alleged uninsured/underinsured tortfeasor. She claims that, because Longo was not an uninsured or underinsured motorist, Allstate has no right to refuse to pay uninsured motorist benefits based on her failure to get consent to the Longo settlement. Carnein further argues that Allstate had no basis on which it could have refused to consent to the Longo settlement. Carnein claims that the consent clause is unenforceable in this context.
Carnein relies on two arguments to support her claim that she only needs consent to settle with the uninsured motorist. First, she argues that, because the consent clause is located within the uninsured motorist coverage section of the insurance contract, it must only apply to uninsured and underinsured motorists. Second, she argues that the sole purpose of the consent clause is to protect the insurer's right of subrogation against the uninsured motorist. While the consent clause is within the uninsured motorist section of the insurance contract, the court does not agree with Carnein's argument that it therefore includes only settlements with uninsured or underinsured motorists. CT Page 3568
Carnein has provided no authority for the proposition that the consent clause is limited in applicability due to its placement in a particular location of the policy. A reading of the clause demonstrates that it is relevant to the uninsured/underinsured section of the contract because a failure to get consent relieves the insurer of its obligation to pay uninsured motorist benefits. The consent clause states that "Allstate will not pay any damages an insured person is legally entitled to recover because of: 1. bodily injury when a settlement has been made without our written consent." (Emphasis in original.) (See Allstate's memorandum in support of the motion for summary judgment [Allstate's memo], attachment to Exhibit D, p. 17.)
"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Tallmadge v. Iroquois GasTransmission System, 252 Conn. 479, 495, 746 A.2d 1277 (2000). Our Supreme Court reiterated, in Tallmadge, that "[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather from one party's subjective perception of the terms." (Internal quotation marks omitted.) Id., 498. Moreover, "[e] specially in the context of commercial contracts, we assume that definite contract language is the best indication of the result anticipated by the parties in their contractual arrangements." Id., 500.
"Contract language is unambiguous when it has a `definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion. . . .'" (Citations omitted.) Levine v. Advest,Inc., 244 Conn. 732, 746, 714 A.2d 649 (1998). "The rules of construction are applied only if the language of the contract is ambiguous, uncertain or susceptible of more than one construction." Id.
Moreover, "[a]n insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . CT Page 3569 [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses." (Internal quotation marks and citations omitted.)Imperial Casualty and Indemnity Co. v. State, 246 Conn. 313, 324-325,714 A.2d 1230 (1998).
Here, the contract language is clear and unambiguous. The parties agreed that Allstate does not have an obligation to pay damages when a settlement is entered into without its consent.
Carnein is correct that our courts have held that consent to settle provisions protect the insurer's right to subrogation. See Bertz v.Horace Mann Ins. Co., Superior Court, judicial district of Waterbury, Docket No. 115842 (June 19, 1995, Flynn, J.) (14 Conn.L.Rptr. 523). In addition to protecting the insurer's right to subrogation, cases validating consent clauses also have reasoned that such clauses "assure that a policyholder uses his or her best efforts to limit the losses sustained by an insurer who is obligated to pay uninsured or underinsured motorist benefits to its policyholder." Id. Another clause within the uninsured motorist section of Carnein's insurance contract that lends support to this reasoning is a trust agreement provision.[4]
The trust agreement provision requires Carnein to preserve "all rights to recovery against any responsible party or insurer." (Allstate's Memo, attachment to Exhibit D, p. 19.)
Moreover, to accept Carnein's argument that she only needs consent to settle against the uninsured motorist would be patently inequitable to the insurer. One does not have to create a hypothetical situation to demonstrate how such a finding could be abused. The facts of this case clearly illustrate the court's concerns. This case involves multiple potential tortfeasors. Prior litigation found Longo to be one hundred percent liable to another accident victim.[5] Longo had an insurance policy limit of $1 million.[6] Carnein settled with Longo and Longo Trucking, without Allstate's consent, for $2400, leaving only an uninsured motorist from whom she may recover for the remainder of her damages. Furthermore, her settlement released Longo and Longo Trucking from all future claims, thereby destroying any right Allstate had to reimburse itself for uninsured motorist benefits paid to Carnein. Accordingly, the court finds that the consent clause applies to settlements with all parties potentially liable to the insured.
As for Carnein's argument that Allstate had no basis upon which to refuse consent to the Longo settlement, "[t]he resolution of [whether an insurer has a basis for refusing consent to a settlement] turns on whether [the insurer] was arguably prejudiced by [the insured's] alleged failure to obtain [the insurer's] consent in settling with the tortfeasor." Garcia v. ITT Hartford Ins. Co., Superior Court, judicial CT Page 3570 district of Hartford, Docket No. 579974 (December 8, 1998, Peck, J.). "[A]n insurer [cannot] withhold its consent to settlement when it is not prejudiced by the insured's settlement with the tortfeasor, or similarly when the refusal to consent to settlement would violate the `obligation of good-faith and fair dealing' imposed on the parties to an automobile insurance contract." Bertz v. Horace Mann Ins. Co., supra,14 Conn.L.Rptr. 523.
The Longo settlement destroyed Allstate's fights under the consent clause and the trust agreement provision. The general release that Carnein provided Longo eliminates any possibility that Allstate may be reimbursed by Longo, Longo Trucking or Peerless for payments made under the uninsured motorist coverage. As such, the court finds that Allstate was prejudiced by the Longo settlement and had a good faith reason for refusing to consent to such a settlement.
Carnein cites Conner v. State Farm Mutual Automobile Ins. Co., Superior Court, judicial district of New Haven, Docket No. 327003 (December 9, 1992, O'Keefe, J.) (8 Conn.L.Rptr. 35), to support her proposition that Allstate had no basis to refuse consent. The court in Conner determined that the insurer had no basis to refuse consent because the settlement exhausted the policy limits of the tortfeasor with whom the settlement was made. See also Pinto v. Norfolk Dedham Mutual Fire Ins. Co., Superior Court, judicial district of Waterbury, Docket No. 111294 (February 23, 1993, Sylvester, J.) (8 Conn.L.Rptr. 397). That is not the situation in the present case. The settlement at issue is the Longo settlement. She settled for $2400; the Longo policy limit was $1 million. Therefore, she did not exhaust the policy of the tortfeasor with whom she was settling. As stated above, the settlement prejudiced Allstate and provided it with a good faith basis for a refusal to consent. Moreover, the more persuasive line of cases holds that a consent clause is valid even if the insured has pleaded exhaustion of the tortfeasor's policy. See Melita v. American States Ins. Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 328791 (April 11, 1997, Hartmere, J.); Bertz v. Horace Mann Ins. Co., supra,14 Conn.L.Rptr. 523.[7]
Accordingly, the court finds that the consent clause is valid, that Allstate did have a good faith basis for denying consent to the Longo settlement, and Allstate is relieved from its obligation to pay uninsured motorist benefits to Carnein concerning Gomez as a result of Carnein's unapproved settlement. Therefore, Allstate's motion for summary judgment is granted.
 III. Exhaustion of Available Insurance CT Page 3571
Although the court's determination that Carnein breached the consent clause is dispositive of this motion, the court notes that Allstate also argues that Carnein violated § 38a-336 by failing to exhaust all available liability insurance, including Longo's policy. Carnein argues to the contrary that she need only exhaust Gomez's insurance.
Section 38a-336 (b), requires an insurer to pay "its insured up to the limits of the policy's uninsured . . . motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured . . . motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage." The Connecticut Supreme Court has held that "under the provisions of §38a-336 (b) . . . the insured need only exhaust the liability bond or insurance policies of one tortfeasor in order for the insured to be eligible to pursue underinsured benefits." (Internal quotation marks omitted.) General Accident Ins. Co. v. Wheeler, 221 Conn. 206, 214,603 A.2d 385 (1992).[8] Accordingly, had Carnein not breached her insurance contract, she may have been able to recover uninsured motorist benefits by merely exhausting Gomez's insurance.[9]
 CONCLUSION
For the foregoing reasons, Allstate's motion for summary judgment is granted. It is so ordered.
BY THE COURT
ROBERT B. SHAPIRO, JUDGE OF THE SUPERIOR COURT