IN RE APPLICATION FOR PETITION FOR WRIT
OF HABEAS CORPUS BY DAN ROSS AS
NEXT FRIEND ON BEHALF
OF MICHAEL B. ROSS
(SC 17342)

IN RE APPLICATION FOR PETITION FOR WRIT
OF HABEAS CORPUS BY THE OFFICE OF
THE CHIEF PUBLIC DEFENDER AS
NEXT FRIEND ON BEHALF OF
MICHAEL B. ROSS
(SC 17343)

Sullivan, C. J., and Norcott, Vertefeuille,
Zarella, Lavery, Foti and Dranginis, Js.

Argued January 21—officially released January 25, 2005*

* January 25, 2005, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Jon L. Schoenhorn,* for the plaintiff in error (petitioner Dan Ross).

*Temmy Ann Pieszak,* chief of habeas corpus services, with whom was *Adele V. Patterson,* assistant public defender, for the plaintiff in error (petitioner office of the chief public defender).

*Harry Weller,* supervisory assistant state's attorney, with whom were *Kevin T. Kane,* state's attorney, and *Michael O'Hare,* supervisory assistant state's attorney, and, on the brief, *Robert J. Scheinblum,* assistant state's attorney, and *Jessica Probolus,* special deputy assistant state's attorney, for the defendant in error (respondent commissioner of correction).

*Edward J. Gavin* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

### Opinion

ZARELLA, J. In this proceeding, we are asked to consider a writ of error brought by the plaintiff in error Dan Ross, as father and next friend of Michael Ross, and a writ of error brought by the plaintiff in error office of the chief public defender of the state of Connecticut, as next friend of Michael B. Ross,[1] challenging the orders of the habeas court, entered on January 3, 2005, dismissing their respective petitions for writs of habeas corpus on the ground that: (1) the habeas petitions submitted by the plaintiffs in error on behalf of Michael Ross were not legitimate filings; and (2) the plaintiffs in error did not have standing to file the peti-

---

[1] We hereinafter refer to Michael B. Ross as Michael Ross.

tions.[2] We affirm the orders of the habeas court dismissing the habeas petitions of the plaintiffs in error and dismiss the writs of error.

The background of this case is described in *State* v. *Ross*, 269 Conn. 213, 849 A.2d 648 (2004), and *State* v. *Ross*, 272 Conn. 577, 863 A.2d 654 (2005). The record reveals the following additional relevant facts pertaining to events since those opinions were released. On December 27, 2004, each of the plaintiffs in error submitted to the Superior Court in the judicial district of Tolland a petition for a writ of habeas corpus as next friend of Michael Ross. The petitions requested, inter alia, a stay of execution of Michael Ross' death sentence and a hearing on Michael Ross' competence to waive further postconviction proceedings. The clerk's office received and date-stamped the petitions, but informed the plaintiffs in error that the petitions would be "held," rather than filed, and that it would not accept filing fees or docket the petitions. Thereafter, the habeas court scheduled a hearing for January 3, 2005,[3] and notified the plaintiffs in error that no continuances would be granted. The chief public defender nonetheless filed a motion for a continuance that the habeas court denied. Thereafter, a hearing was conducted on January 3, 2005, to determine whether the court had jurisdiction to issue the writs sought by the plaintiffs in error. The habeas court specifically required that the plaintiffs in error demonstrate their standing to file petitions on behalf of Michael Ross by presenting evidence of Michael Ross' incompetence. Following the

---

[2] We hereinafter refer to the plaintiff in error Dan Ross as Dan Ross, and to the plaintiff in error office of the chief public defender of the state of Connecticut as the chief public defender. We refer to them collectively as the plaintiffs in error.

[3] The order dated December 27, 2004, pertaining to the hearing, stated as follows: "No stay of execution will issue pending the legitimacy of the hearing scheduled on January 3, 2005, at 10:00 a.m., in Courtroom A at 20 Park Street, Rockville, CT."

presentation of evidence, the habeas court concluded that the plaintiffs in error had failed to raise any doubt about Michael Ross' competence and, therefore, declined to issue the writs and dismissed the petitions because the plaintiffs in error did not have legal standing to pursue habeas corpus petitions on behalf of Michael Ross. On January 13, 2005, the plaintiffs in error filed motions for reconsideration and petitions for certification to appeal. The habeas court denied those motions and petitions. On January 18, 2005, the plaintiffs in error filed the present writs of error challenging the dismissal of their habeas petitions.

While these proceedings were pending, several other courts rendered decisions regarding Michael Ross' competency. On January 10, 2005, the United States District Court for the District of Connecticut issued an order on a motion filed by Dan Ross seeking appointment as next friend of Michael Ross for the purpose of challenging the constitutionality of the state's protocol for lethal injection.[4] See *Ross* v. *Rell*, Docket No. Civ.A.3:04 CV 2186 C, 2005 WL 61494, *4 (D. Conn. January 10, 2005). Following a hearing in which Michael Ross and his attorney participated, the District Court concluded that Dan Ross had "provided no affirmative evidence of [Michael Ross'] incompetence, incapacity or other disability," and that Michael Ross was competent to proceed on his own behalf. Id., *2. Consequently, the court lacked "a sufficient basis to appoint a next friend to litigate in [Michael Ross'] name." Id.

In reaching its conclusions, the District Court evaluated the evidence adduced at the hearing in light of well established federal case law pertaining to standards for evaluating competency; see id., citing *Cooper* v. *Okla-*

---

[4] Dan Ross was the sole plaintiff in this federal action. The defendants included M. Jodi Rell, the governor of Connecticut, Theresa C. Lantz, the commissioner of correction, and David N. Strange, the warden of Osborn correctional institution.

*homa*, 517 U.S. 348, 354, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996); and the "heightened" standard that applies when defendants seek to waive their constitutional rights, which requires a determination of whether the waiver was made knowingly and voluntarily. See *Ross* v. *Rell*, supra, 2005 WL 61494, *2, citing *Whitmore* v. *Arkansas*, 495 U.S. 149, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990). The District Court ultimately concluded, on the basis of: (1) psychiatric evaluations of Michael Ross in 1995 and 2004; (2) an affidavit filed by Michael Ross in Superior Court in October, 2004; (3) the transcripts of recent Superior Court proceedings to determine Michael Ross' competency in October, 2004, December, 2004, and January, 2005; and (4) Michael Ross' participation in the District Court hearing on January 7, 2005, that Michael Ross exceeded the competency threshold required by prevailing federal and state standards. *Ross* v. *Rell*, supra, *3.

Subsequent to the decision of the District Court, this court issued an opinion on January 14, 2005, dismissing a previous writ of error brought by the chief public defender challenging the trial court's denial of its motion to appear as next friend of Michael Ross, a party in interest, an intervenor, or amicus curiae in postconviction proceedings in the three criminal cases against Michael Ross on the ground that Michael Ross was incompetent.[5] See *State* v. *Ross*, supra, 272 Conn. 579, 613. We concluded that the chief public defender did not have standing to represent Michael Ross as next friend because it had provided no "meaningful evidence" of Michael Ross' incompetence that would have entitled it to an evidentiary hearing on the matter. Id., 611. We also concluded that the trial court did not abuse its discretion in denying the chief public defend-

---

[5] The state was the defendant in error in this case involving the previous writ of error. Michael Ross' attorney, T.R. Paulding, Jr., also argued on Michael Ross' behalf.

er's motion to appear as amicus curiae.[6] Id., 611, 613. These conclusions were based on an analysis of the evidence similar to that undertaken by the District Court in *Ross* v. *Rell*, supra, 2005 WL 61494.

We first reviewed evidence regarding Michael Ross' competency presented at recent trial court proceedings in October, 2004, and December, 2004. See *State* v. *Ross*, supra, 272 Conn. 609–11. In response to the chief public defender's representation that it had obtained evidence of Michael Ross' incompetence that never had been presented to any court, we also issued an order authorizing the chief public defender to file with this court an offer of proof detailing the evidence that would be presented if an evidentiary competency hearing were to be held. See id., 592. The chief public defender subsequently filed an offer of proof with summaries of the proposed testimony of two psychiatrists, five attorneys within the office of the public defender, the state death penalty abolition coordinator for the Connecticut branch of Amnesty International and executive director of the Connecticut Network to Abolish the Death Penalty, and Dan Ross. Id. Several proposed exhibits also accompanied the chief public defender's offer of proof. Id.

We evaluated the evidence according to standards set forth in *Whitmore* v. *Arkansas*, supra, 495 U.S. 163–64, which establishes two prerequisites for demonstrating next friend status,[7] *Rees* v. *Peyton*, 384 U.S. 312, 313–14,

---

[6] On January 12, 2005, the public defender brought a second writ of error with this court alleging several errors of law in the trial court's decision of December 28, 2004, finding that Michael Ross was competent to waive his right to seek further postconviction relief and that his decision was voluntary. On January 19, 2005, this court ordered dismissal of the second writ of error in light of its decision in *State* v. *Ross*, supra, 272 Conn. 577, to dismiss the first writ of error.

[7] In *Whitmore* v. *Arkansas*, supra, 495 U.S. 149, the United States Supreme Court noted that, to establish next friend status, a person: (1) "must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate . . . [and] must have some significant relationship with the real

86 S. Ct. 1505, 16 L. Ed. 2d 583 (1966), which describes the standard for mental incompetence in this context,[8] and *Demosthenes* v. *Baal*, 495 U.S. 731, 736, 110 S. Ct. 2223, 109 L. Ed. 2d 762 (1990), which held that a trial court is not constitutionally required to grant next friend status if no "meaningful evidence" has been presented that a defendant is incompetent. See *State* v. *Ross*, supra, 272 Conn. 598–602, 611. We concluded that the chief public defender had not presented any "meaningful evidence" of incompetence that would have entitled it to an evidentiary hearing. Id., 611. Consequently, we determined that the chief public defender did not have standing as next friend to represent Michael Ross. See id. On January 18, 2005, the plaintiffs in error filed the present writs of error challenging the habeas court's rejection of their respective habeas petitions.[9]

I

The plaintiffs in error first challenge the habeas court's dismissal of their habeas petitions seeking next friend status. They contend that, although the habeas court has the power and duty to determine its own jurisdiction, it may not prevent full and fair litigation of the factual issue of standing. We are unpersuaded.

---

party in interest"; id., 163–64; and (2) "must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action." Id., 163.

[8] *Rees* requires that the court make a determination as to whether Michael Ross "has [the] capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees* v. *Peyton,* supra, 384 U.S. 314.

[9] We note that the writs of error brought by the plaintiffs in error are properly before this court. As we concluded in *Ross,* a person denied next friend status is aggrieved by the court's determination that it has no standing and is entitled to bring a writ of error to challenge that determination. See *State* v. *Ross,* supra, 272 Conn. 597–98. Accordingly, this court has jurisdiction to address the claims of the plaintiffs in error.

We begin with our standard of review. It is well established that "[w]hether a person who has alleged that a defendant is incompetent to waive further challenges to his death sentence is entitled to present evidence at a competency hearing is a question of law over which our review is plenary." Id., 598.

At the time of the habeas court's decision on January 3, 2005, to reject the habeas petitions brought by the plaintiffs in error, neither this court nor the District Court had rendered decisions in the parallel actions brought by the plaintiffs in error involving the issue of Michael Ross' competency. Nevertheless, because this court and the District Court, relying in part on transcripts of trial court proceedings before Judge Clifford in October and December, 2004, found that Michael Ross was not incompetent shortly after the habeas court had rendered its decision, we affirm the habeas court's orders under principles of res judicata.

The related doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter that it already has had a fair and full opportunity to litigate. E.g., *State* v. *Ellis*, 197 Conn. 436, 466, 497 A.2d 974 (1985). Collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . [Thus] [i]ssue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment." (Citations omitted.) *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 260, 773 A.2d 300 (2001). The doctrine of collateral estoppel "express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." *State* v. *Ellis*, supra, 465.

"[T]he decision whether to apply the doctrine of collateral estoppel in any particular case should be made based upon a consideration of the doctrine's underlying policies . . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 59, 808 A.2d 1107 (2002).

"Unique policy considerations must be taken into account in applying the doctrine of res judicata to a constitutional claim raised by a habeas petitioner. . . . Foremost among those considerations is the interest in making certain that no one is deprived of liberty in violation of his or her constitutional rights. . . . With that in mind, we limit the application of the doctrine of res judicata . . . to claims that actually have been raised and litigated in an earlier proceeding." (Citation omitted.) *Thorpe* v. *Commissioner of Correction*, 73 Conn. App. 773, 779 n.7, 809 A.2d 1126 (2002).

Under the foregoing principles, we conclude that the plaintiffs in error have been afforded a full and fair opportunity to litigate the issue of Michael Ross' alleged incompetency in prior proceedings before this court and the District Court,[10] respectively. We also conclude

---

[10] A judgment is deemed to be final for purposes of res judicata at the time it is issued, although some jurisdictions have determined that a judgment is not final under the doctrine of res judicata until the time in which to appeal has passed. See *Conopco, Inc.* v. *Roll International*, 231 F.3d 82, 90 (2d Cir. 2000) (California requires that judgment be both final and not appealable before it may be given preclusive effect, in stark contrast to rules in federal court and vast majority of states).

that, because Michael Ross has been deemed not to be incompetent in each of the other judicial proceedings in which the issue has been litigated; see *Ross* v. *Rell,* supra, 2005 WL 61494, *2–*3; *State* v. *Ross,* supra, 272 Conn. 611; the habeas court properly dismissed the habeas petitions of the plaintiffs in error.

Dan Ross had a full and fair opportunity to litigate Michael Ross' alleged incompetency before the District Court when he sought next friend status for the purpose of challenging the constitutionality of Connecticut's lethal injection protocol. See *Ross* v. *Rell,* supra, 2005 WL 61494, *2–*3. The court held a hearing on the standing issue, at which Dan Ross and his attorney were allowed to proffer evidence of Michael Ross' incompetency. See id., *1. Despite that opportunity, the court concluded that "Dan Ross ha[d] failed to meet his burden of showing that Michael Ross, the real party in interest, is unable to litigate his own claim, and therefore that it would not be justified to allow Dan Ross to proceed as next friend." Id., *2. The court specifically concluded: "Despite suffering from various psychological disorders, Michael Ross never has been found incompetent to stand trial or to waive his right to appeal. The Court's own observation of Michael Ross at the hearing of January 7, 2005, confirms that he is competent under these standards. He is capable of caring for himself; he is capable of consulting with his lawyer and understanding the legal and factual issues before him with a high degree of rational understanding; and he has made a knowing and voluntary waiver of his right to bring this action, one which was uncoerced and made in full understanding of the significance and consequence of that decision. Michael Ross has also been provided competent and effective counsel by Attorney [T.R. Paulding, Jr.]. As to the instant action, Michael Ross responded to the Court's questioning rationally and intelligently. He is quite familiar with all the legal

and factual issues raised in this case, has had sufficient time to consider his course of action, has not been under any medication in the last week that would impede his ability rationally to decide whether to join this complaint, and has not been coerced or otherwise pressured into his decision not to pursue this case nor permit his father to do so.

"Given Michael Ross' amply demonstrated competence before this Court and other courts, there is no basis for ordering a full evidentiary hearing on the issue of his competency. Nor, given Michael Ross' reasoned and rational decision not to pursue this action, is there any basis for allowing a 'next friend' to pursue it on his behalf." Id., *3.

The chief public defender likewise had a full and fair opportunity to litigate the issue of Michael Ross' alleged incompetency in the trial court and before this court in *State* v. *Ross*, supra, 272 Conn. 577. In reaching a conclusion similar to that of the District Court, we determined in our decision rendered on January 14, 2005, that the chief public defender did not offer any meaningful evidence of Michael Ross' incompetency, and, therefore, that the chief public defender lacked standing as Michael Ross' next friend. See id., 611. We reached our conclusions by employing an analytical approach similar to that employed by the District Court.

With respect to the evidence provided by Michael Norko, a psychiatrist, in the chief public defender's written offer of proof, we noted that "Norko recognized that [Michael Ross] had depressive symptoms, a history of suicide attempts and moments of intense anxiety and emotion. He also was aware that [Michael Ross] appeared occasionally to be emotionally drained, had doubts that his actions would bring any comfort to the victims' families and was occasionally ambivalent about his decision. Norko concluded that these feelings were

normal for a person in [Michael Ross'] position and did not mean that he was incapable of making a rational choice. In addition, Norko was aware that the defendant would prefer a sentence of life imprisonment to death, but did not want a new penalty phase hearing. With respect to [the] testimony [of Robert Nave, the state death penalty abolition coordinator for the Connecticut branch of Amnesty International and executive director of the Connecticut Network to Abolish the Death Penalty] and the proposed testimony of [Dan Ross] suggesting that [Michael Ross] suffered from delusions of importance and extreme narcissism, Norko recognized that [Michael Ross] suffered from a personality disorder with narcissistic traits but concluded that the disorder did not affect his ability to make a rational decision. With respect to the public defender's claims that [Michael Ross] did not understand his legal options, the trial court extensively canvassed [Michael Ross] on that issue and reasonably found otherwise.

"We also conclude that [the proposed testimony of Stuart Grassian, a psychiatrist] on the effect of segregated confinement on [Michael Ross'] ability to make a rational and voluntary choice is speculative. Grassian has neither examined [Michael Ross] nor inspected the conditions of [Michael Ross'] confinement. Norko stated in his report that [Michael Ross] has frequent visitors in prison, corresponds with numerous people and regularly prays, reads, listens to music, watches television and does puzzles and word games. Norko also found that, although [Michael Ross] occasionally suffered from some of the symptoms listed by Grassian, he generally slept well, had a normal appetite and a good energy level, was able to concentrate and to process thought, had no memory disturbances and expressed no suicidal thoughts. Moreover, Grassian's proposed testimony that Norko had failed to recognize that [Michael Ross'] intelligence would allow him to conceal

a 'hidden agenda' is not supported by the record. Norko specifically stated in his report that [Michael Ross] 'has hidden things from the [prison's mental health] staff in the past . . . .' He further stated that [Paul Chaplin, a psychologist employed by the state department of correction] 'has tried to look through the surface, but does not see any significant concerns.' For similar reasons, we conclude that [the proposed testimony of Eric Goldsmith, a psychiatrist] that [Michael Ross'] decision is not voluntary is speculative and not supported by the record. Finally, we conclude that much of the proposed testimony by many of the witnesses is conclusory in that it suggests that [Michael Ross'] decision to take control of his fate by forgoing further legal challenges to his death sentences and his ambivalent feelings over the consequences of that decision are, in and of themselves, evidence of his incompetence. We see no basis for that proposition in logic, experience or the law." Id., 609–11.

In sum, the plaintiffs in error have been given every reasonable opportunity to demonstrate that Michael Ross is incompetent and have failed to sustain their burden. The chief public defender provided this court with a written offer of proof that presumably contained all of the available relevant evidence on the issue of Michael Ross' incompetency. In the District Court, Dan Ross and his attorney testified as to Michael Ross' incompetency at a hearing on their motion. Thereafter, both this court and the District Court analyzed the evidence in light of the prevailing legal standards and concluded that there was insufficient evidence to find that Michael Ross lacked the requisite competence to represent his legal interests. See *Ross* v. *Rell*, supra, 2005 WL 61494, \*2–\*3; *State* v. *Ross*, supra, 272 Conn. 611. The issue of Michael Ross' competence was not only essential to those determinations, but formed the basis of the controversies in both proceedings. The fact that

this court and the District Court rendered their decisions subsequent to that of the habeas court does not preclude our review of the present writs of error under the same principles of res judicata that would apply if the habeas court's decision had been rendered following those other two decisions. Because the issue of Michael Ross' competence has been fully and fairly litigated between the same parties in other proceedings, the issue must be laid to rest in view of Connecticut's public policy goals of encouraging stability in judgments and promoting judicial economy by minimizing repetitive litigation. See, e.g., *Cumberland Farms, Inc.* v. *Groton*, supra, 262 Conn. 59. We therefore affirm the habeas court's dismissal of the habeas petitions of the plaintiffs in error on the ground that they lacked standing.

The plaintiffs in error argue, however, that the doctrine of res judicata is not applicable in the habeas corpus context. Relying on *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 712 A.2d 947 (1998), the plaintiffs in error contend that, because habeas corpus proceedings allow the presentation of evidence outside the trial court record, principles of res judicata are inconsistent with the administration of justice in habeas corpus cases. We are not persuaded.

In *James L.*, the habeas court dismissed the initial habeas petition of the petitioner, James L., claiming ineffective assistance of counsel at trial. Id., 135. The petitioner brought a second habeas petition claiming ineffective assistance of counsel because his attorney had failed to file an application for sentence review within the statutory time limit. Id. The petition was granted and the court restored the petitioner's right to apply for sentence review. Id. The respondent commissioner of correction then appealed from the habeas court's judgment. Id.

On appeal, the respondent argued that the second petition alleging ineffective assistance of counsel at sentencing "raised the same 'ground' as the previous petition" alleging ineffective assistance of counsel at trial. Id., 140. We concluded that the habeas court had not abused its discretion in declining to dismiss the second petition because the two petitions did not raise the same ground within the meaning of Practice Book § 23-29 (3).[11] *James L.* v. *Commissioner of Correction*, supra, 245 Conn. 142. We then concluded that, even if the two petitions had presented identical grounds, the habeas court would have acted within its discretion in declining to dismiss the second petition because the language of § 23-29 is discretionary rather than mandatory. Id. In a footnote, we further observed: "The language of this [Practice Book] provision illustrates the common-law principle that the doctrines of res judicata and collateral estoppel, claim preclusion and issue preclusion, respectively, are ordinarily inapplicable in the habeas corpus context. 'Conventional notions of finality of litigation have no place where life or liberty is at stake and the infringement of constitutional rights is alleged. . . . The inapplicability of res judicata to habeas, then, is inherent in the very role and function of the writ.' *Sanders* v. *United States*, [373 U.S. 1, 8, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963)]." *James L.* v. *Commissioner of Correction*, supra, 142 n.11.

We note that this court did not state in *James L.* that the doctrine never was applicable in the habeas corpus context, but only that the doctrine was "ordinarily inapplicable"; id.; because "notions of finality of litigation have no place where . . . the infringement of constitu-

---

[11] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time . . . dismiss the [habeas] petition . . . if it determines that . . .

"(3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or proffer new evidence not reasonably available at the time of the prior petition . . . ."

tional rights is alleged." (Internal quotation marks omitted.) Id. This is not such a case. The plaintiffs in error do not allege the violation of a substantive right, but are seeking access to the courts for the purpose of making claims as next friend on behalf of an inmate who strongly objects to their actions. This is not the type of claim to which *James L.* referred as not falling within the doctrine of res judicata.

"The doctrine [of res judicata] applies to criminal as well as civil proceedings and to state habeas corpus proceedings. . . . *Brown* v. *Commissioner of Correction*, 44 Conn. App. 746, 750, 692 A.2d 1285 (1997), citing *McCarthy* v. *Warden*, 213 Conn. 289, 294–98, 567 A.2d 1187 (1989), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990); see also *Thorpe* v. *Commissioner of Correction*, supra, 73 Conn. App. 778 (holding that habeas court correctly determined that petitioner was barred by res judicata from relitigating first federal due process claim in habeas petition); *Smith* v. *Liburdi*, 22 Conn. App. 562, 563–64, 578 A.2d 160 (holding that trial court properly quashed petitioner's habeas corpus petition on ground that petitioner fully litigated claim on direct appeal from judgment of conviction), cert. denied, 216 Conn. 816, 580 A.2d 60 (1990)." (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 86 Conn. App. 42, 45, 859 A.2d 948 (2004). Accordingly, we reject the arguments of the plaintiffs in error that res judicata principles do not apply in the context of this case.

II

The plaintiffs in error make additional claims relating to the habeas court proceedings. They first claim that the habeas court denied them their rights under the fifth, sixth and fourteenth amendments to the United States constitution by declining to follow established Connecticut law pertaining to the filing of petitions for

writs of habeas corpus. They claim, specifically, that the habeas court denied them access to the court by denying issuance of the writs, ordering the clerk not to docket the petitions, ruling that the petitions were not filed even though the habeas court was conducting proceedings on their merits and failing to provide sufficient notice as to the purpose of the hearing.

The plaintiffs in error also claim that the habeas court denied them their due process rights under the fifth and fourteenth amendments to the United States constitution and under article first, § 8, of the Connecticut constitution by failing to satisfy established federal constitutional standards that guarantee parties to a legal proceeding a full and fair opportunity to be heard. They contend that the habeas court failed to give them notice that the January 3, 2005 hearing would be an evidentiary hearing to determine the court's jurisdiction, declined to grant a continuance so that they could prepare adequately for the hearing and declined to grant them a full and fair opportunity to be heard on the issue of Michael Ross' waiver of his right to continue seeking postconviction remedies.

Because we have determined that the orders of the habeas court should be affirmed and that the writs of error should be dismissed under principles of res judicata, we conclude that the claims of procedural error in the habeas proceedings are moot and need not be addressed. A remand for the purpose of correcting any procedural defects would be pointless in light of our determination that the competency issue has been fully litigated in prior actions.

III

Dan Ross makes a separate claim that the habeas court improperly determined that he did not have standing to argue that Michael Ross cannot be executed until the consolidated habeas litigation ordered by this court

on behalf of "all" defendants sentenced to death has been resolved.[12] Citing *State* v. *Martini*, 144 N.J. 603, 677 A.2d 1106 (1996), cert. denied, 519 U.S. 1063, 117 S. Ct. 699, 136 L. Ed. 2d 621 (1997), Dan Ross argues that he should have been given an opportunity to be heard on the merits of whether any purported waiver of such a claim by Michael Ross is void and illegal as against public policy because the claim's importance transcends the preferences of any individual defendant. We disagree.

In *Martini*, in which a capital defendant decided to forgo further postconviction review of his sentence; id., 606; the New Jersey Supreme Court ordered the state to halt all executions until it had resolved whether its capital punishment scheme was constitutional. See id., 617. The court declared: "The public has an interest in the reliability and integrity of a death sentencing decision that transcends the preferences of individual defendants." Id., 605.

We are not aware of any case, including *Martini*, in which a claim of standing has been based on the outcome of pending litigation. The defendant in *Martini* was represented by a public defender who sought post-

---

[12] "Several defendants who have been sentenced to death in Connecticut have filed petitions for writs of habeas corpus in which they claim that the state's capital punishment scheme is illegal, arbitrary, discriminatory, disproportionate, wanton and freakish due primarily to the influence of race and other arbitrary factors on the imposition of capital punishment throughout Connecticut. See *State* v. *Reynolds*, 264 Conn. 1, 226–34, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004); see also *State* v. *Colon*, 272 Conn. 106, 377–78, 864 A.2d 666 (2004); *State* v. *Breton*, 264 Conn. 327, 405, 824 A.2d 778, cert. denied, 540 U.S. 1055, 124 S. Ct. 819, 157 L. Ed. 2d 798 (2003); *State* v. *Cobb*, 251 Conn. 285, 499, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000); *State* v. *Webb*, 238 Conn. 389, 504–505 n.73, 680 A.2d 147 (1996) . . . . In December, 2002, Chief Justice Sullivan appointed Chief Justice Robert Callahan to serve as a special master to manage the litigation of these claims. . . . That litigation is pending at this time." (Citations omitted.) *State* v. *Ross*, supra, 272 Conn. 582 n.4.

conviction relief on the defendant's behalf over the defendant's objection. Id., 606. The issue in that case was not whether the public defender had standing to bring the claim, but whether "a defendant who has presented mitigating factors to a jury and has had his conviction and sentence affirmed on direct appeal may waive post-conviction relief . . . ." Id., 609. The court in *Martini* concluded that the answer to this question depended on the "importance of post-conviction relief to ensuring the reliability and integrity of death sentences imposed in New Jersey." Id. Ultimately, the court determined that pending litigation regarding the question of possible systemic discrimination against African-Americans and other minorities in the enforcement of the death penalty in New Jersey was of sufficient importance to overcome the defendant's waiver of postconviction relief. See id., 614–15. *Martini* therefore does not provide a basis for standing in the present case.

IV

Dan Ross finally claims that familial interests entitle him to a full evidentiary hearing to determine Michael Ross' competency. He asserts that, should the execution go forward, he will be deprived permanently of contact with his son, including his right to associate with and maintain a relationship with him. He argues that this right entitles him to a hearing that comports with due process. We disagree.

In *Gilmore* v. *Utah*, 429 U.S. 1012, 97 S. Ct. 436, 50 L. Ed. 2d 632 (1976), in which Bessie Gilmore filed an application for a stay of execution as next friend on behalf of her son, Gary Mark Gilmore, Chief Justice Burger, in a concurring opinion, considered the issue of whether Bessie Gilmore had standing to seek the requested relief. Id., 1014 (Burger, C. J., concurring). He noted that jurisdiction would arise only if it were demonstrated that Gary Gilmore was unable to seek

relief in his own behalf, and then observed: "Since Gary Mark Gilmore has . . . filed a response and appeared in his own behalf, through his retained attorneys, any basis for the standing of Bessie Gilmore to seek relief in his behalf is necessarily eliminated. The only possible exception to this conclusion would be if the record suggested, despite the representations of Gary Mark Gilmore's attorneys, that he was incompetent to waive his right of appeal under state law and was . . . incompetent to assert rights or to challenge Bessie Gilmore's standing to assert rights in his behalf as next friend.

"After examining with care the pertinent portions of the transcripts and reports of state proceedings, and the response of Gary Mark Gilmore . . . I am in complete agreement with the conclusion expressed in the Court's order that Gary Mark Gilmore knowingly and intelligently, with full knowledge of his right to seek an appeal in the Utah Supreme Court, has waived that right. I further agree that the State's determinations of his competence to waive his rights knowingly and intelligently were firmly grounded. . . .

"[I]t is plain that the Court is without jurisdiction to entertain the next friend application filed by Bessie Gilmore." (Internal quotation marks omitted.) Id., 1014–16 (Burger, C. J., concurring).

In the present case, as in *Gilmore,* the familial bond between parent and child is insufficient to mandate a competency hearing in light of Michael Ross' knowing and intelligent waiver of his right to pursue additional postconviction remedies.

The orders of the habeas court dismissing the habeas petitions of the plaintiffs in error are affirmed and the writs of error are dismissed.

In this opinion the other justices concurred.