PETER SYDORIAK *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF PROSPECT ET AL.
(AC 25738)

Dranginis, Gruendel and Foti, Js.

Argued April 18—officially released August 9, 2005

*Jennifer Sills Yoxall*, for the appellants (defendants).

*Franklin G. Pilicy*, for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. The defendants, the zoning board of appeals of the town of Prospect (board), Domenic Moschella, the chairperson of the board, and Maryann C. Anderson, the town clerk of Prospect, appeal from the judgment of the trial court sustaining the appeal of the plaintiff, Peter Sydoriak, from the board's decision denying him a variance and remanding the matter to the board for it to impose reasonable conditions, if appropriate, to protect the health and safety of the

town's citizens.[1] This was the third action between the parties to have come before the trial court involving the use of the lot at issue. In this appeal, the defendants claim that (1) the court's decision that the plaintiff suffered a hardship is in direct conflict with a previous court decision that any hardship was self-created and, therefore, is a conclusion barred by the doctrine of collateral estoppel, (2) regardless of whether the court was barred by the doctrine of collateral estoppel from reaching the question of hardship, it improperly determined that the plaintiff suffered an "unusual hardship" that was not self-created, and (3) the court improperly substituted its judgment for that of the board with respect to safety concerns. We affirm the judgment of the trial court.[2]

I

It is necessary to discuss briefly the history of this case, especially because the defendants invoke the doctrine of collateral estoppel in their first claim. At a tax sale in 1983, the plaintiff purchased the subject premises, a triangular piece of property located at 77 Morris Road in Prospect, for $2000. He purchased it in

[1] Even though the trial court remanded the matter to the board so that it could impose reasonable conditions to protect the health and safety of the town's citizens, the judgment from which the defendants appealed is a final judgment. This case is similar to *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 653 A.2d 798 (1995), in which our Supreme Court considered the judgment of the trial court that reversed the zoning commission's denial of a zone change application and remanded the matter to the commission so that it could impose reasonable conditions on and make changes to the application. Like the court's judgment in *Kaufman*, the judgment here permits the board to consider evidence and to impose reasonable conditions on the variance application, but it does not require the board to do so, and, because of the nature of the remand, the board here, like the commission in *Kaufman*, may not deprive the plaintiff of the variance he seeks and, for that reason, the judgment is final.

[2] Because we affirm the judgment on the basis of the claims that the court decided, we need not address the plaintiff's additional claim of confiscation, which, although raised in the trial court, was not reached by the court.

conjunction with the purchase of nine other lots in the town, all of which he procured for a similar price. At the time the plaintiff purchased the lot, he was told that it was a nice, small lot on which to build a house. The lot is surrounded on all three sides by public roads, which define its contours. The description contained in the deed acquired by the plaintiff identifies the lot's boundaries as 200 feet on Terry Road, 200 feet on Clark Hill Road and 225 feet on Terry Road.[3] The lot also is adjacent to the intersection of a fourth road. This lot was created prior to zoning, when the town cut a road through a subdivision. At that time, and since then, the lot has remained vacant. This lot was taxed as a building lot at the time the town sold it to the plaintiff. In 1986, the plaintiff requested and obtained a change in the tax status of the lot.[4]

The plaintiff's lot is situated in the RA1 district, which is a residential district, and the primary use of land in this district is for single-family homes. Prospect Zoning Regs., § 300. The zoning regulations applicable to this district require a fifty foot setback from any street line. Id., Table of General Bulk Regulations. Because the plaintiff's lot is surrounded by three roads, any residence built on the lot is subject to a fifty foot setback on all three sides, unless the plaintiff obtains a variance. Strict application of these setback requirements would allocate 140 square feet for the building of a residence.

---

[3] The court noted that the description of the property contained in the deed does not correspond to the map prepared by the plaintiff's surveyor. This map indicates that the plaintiff's property is bound by Bronson, Clark Hill and Morris Roads. Even though this discrepancy exists in the record, there is no dispute between the parties regarding the location of the plaintiff's lot.

[4] It is unclear from the record whether the plaintiff sought this tax rate reduction in response to the board's denial of a variance that would have permitted him to build a single-family home on the lot. Regardless of the plaintiff's reasons for seeking a tax rate reduction, we find the current tax status of the lot to be irrelevant to this appeal.

Several times over the years, the plaintiff has attempted to obtain one or more variances so that he might build a residence on the lot. Each time he has applied for a variance, the board has denied his request. In 1991, the plaintiff appealed from the board's denial of a variance to the trial court, *Gaffney, J.*, which dismissed his appeal for lack of standing. *Sydoriak* v. *Zoning Board of Appeals*, Superior Court, judicial district of Waterbury, Docket No. 104482 (February 13, 1992) (7 C.S.C.R. 374) (*Sydoriak I*). In concluding that the plaintiff was not aggrieved because the lot, even in its unimproved condition, was worth approximately $8000 more than what he had paid, the court found that the plaintiff had purchased the lot with knowledge of the zoning regulations and with knowledge that those regulations effectively prohibited him from building on the lot. Id. The court concluded that these circumstances were not beyond the plaintiff's control. Id. The plaintiff did not file a petition for certification to appeal so that this court could review the trial court's judgment.

Several years later, the plaintiff again sought a building permit, which was rejected by the zoning officer and denied by the board, and the plaintiff appealed to the trial court. The court, *Holzberg, J.*, in 2002, sustained the plaintiff's appeal, and, contrary to the conclusions of the court in *Sydoriak I*, concluded that the plaintiff was aggrieved. *Sydoriak* v. *Zoning Board of Appeals*, Superior Court, judicial district of Waterbury, Docket No. 155123 (June 6, 2002) (*Sydoriak II*). The court also concluded that, as a matter of law, the lot was a "legal nonconforming lot pursuant to the Prospect zoning regulations." (Internal quotation marks omitted.) Id. In concluding that the lot was a legal nonconforming lot, the court also determined that the nonconformance was not attributable to the plaintiff, i.e., it was not a self-created nonconformity. Id. The court also held that

the plaintiff had the right to apply for one or more variances, with any application to be considered on its merits in accordance with state law and the town's zoning regulations. Id. The defendants did not file a petition for certification to appeal so that this court could review the trial court's judgment.

Shortly thereafter, in August, 2002, the plaintiff filed an application seeking a variance of the setback regulations so that he could build a small house on the lot. He initially sought two variances, seeking a setback of only seventeen feet on Morris Road and thirty-three feet on Terry Road. After meeting with the town zoning officer, in an attempt to determine the smallest variance necessary to accomplish his goal of building a single-family house on the lot, the plaintiff amended his application so that he sought only one variance, a setback of twenty-seven feet on Clark Hill Road. The public hearing on the plaintiff's application commenced on September 24, 2002, and culminated on November 26, 2002. At the close of the public hearing, the board voted on the plaintiff's application. Three of the five board members voted in favor of approving the variance, but because four votes are needed to approve a variance; General Statutes § 8-7; the plaintiff's request was denied. The board gave several reasons for the denial, namely, that the hardship was self-created, that the plaintiff purchased the lot with knowledge of the zoning restrictions and that granting the variance would cause safety concerns.

The plaintiff appealed to the Superior Court, *Matasavage, J.*, which sustained his appeal. The court concluded that the board had acted illegally and arbitrarily, and had exceeded its authority by denying the variance on the basis of the concept of self-created hardship and the purchase with knowledge rule. The court also concluded that the board had acted arbitrarily in denying the variance on the basis of safety concerns. The

court remanded the matter to the board with direction to impose reasonable conditions, if appropriate, to protect the health and safety of town citizens. The defendants have appealed to this court.

## II

Prior to addressing the standard of review we apply in zoning appeals, we consider the defendants' claim that the court was prohibited from considering whether the plaintiff's hardship was self-created because of the doctrine of collateral estoppel. The defendants argue that this claim was litigated thoroughly in *Sydoriak I* because that court's conclusions regarding aggrievement were predicated on factual issues of self-created hardship and the application of the purchase with knowledge rule to the present circumstances. The plaintiff essentially argues that the judgment in *Sydoriak II*, insofar as it determined issues already considered in *Sydoriak I*, prohibits the defendants from raising claims of collateral estoppel based on the judgment of the court in *Sydoriak I*. Because the defendants failed to seek review of the judgment in *Sydoriak II* by filing with this court a petition for certification to appeal, we agree with the plaintiff.[5]

"Collateral estoppel, or issue preclusion, means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit . . . . [Thus] [i]ssue preclusion arises when an issue is actually litigated and determined

---

[5] Our conclusion that the defendants are barred from relying on the special defense of collateral estoppel is limited to the narrow facts of this case. We do not consider whether the defendants similarly would have been barred from raising that defense had they petitioned this court for certification to appeal and been denied. See *Mandanici* v. *Zoning Board of Appeals*, 50 Conn. App. 308, 311–12, 717 A.2d 287 (holding that issue of hardship was not res judicata where certification to appeal was denied), cert. denied, 247 Conn. 935, 719 A.2d 1174 (1998).

by a valid and final judgment, and that determination is essential to the judgment. . . . The doctrine of collateral estoppel express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Citation omitted; internal quotation marks omitted.) *In re Application for Writ of Habeas Corpus by Dan Ross*, 272 Conn. 653, 661, 866 A.2d 542 (2005).

Generally, "[t]he decision whether to apply the doctrine of collateral estoppel in any particular case should be made based upon a consideration of the doctrine's underlying policies . . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest." (Internal quotation marks omitted.) Id., 662.

We note that the defendants failed to plead collateral estoppel as a special defense; see Practice Book § '10-50; although they did brief this claim to the trial court. We also recognize that the court implicitly rejected their argument when it drew conclusions about the source of the plaintiff's hardship and relied on the judgment of *Sydoriak II* rather than *Sydoriak I*. Whether the court properly declined to invoke the doctrine of collateral estoppel is a question of law over which our review is plenary. *Corcoran* v. *Dept. of Social Services*, 271 Conn. 679, 688, 859 A.2d 533 (2004).

When considering whether a claim is barred by the doctrine of collateral estoppel, the court usually must determine whether the issue that is the subject of the claim "was actually litigated and necessarily deter-

mined in a prior action . . . ." *Efthimiou* v. *Smith*, 268 Conn. 499, 506, 846 A.2d 222 (2004). For the question of collateral estoppel to be before the court, however, it must have been pleaded as a special defense. *Carnese* v. *Middleton*, 27 Conn. App. 530, 537, 608 A.2d 700 (1992);[6] see also Practice Book § 10-50. Not only did the defendants in this case fail to plead the doctrine of collateral estoppel as a special defense, they also failed to seek review of *Sydoriak II*, which, contrary to *Sydoriak I*, concluded that the plaintiff was not the source of the lot's nonconformance and, consequently, not the source of the hardship. Because the defendants failed to seek with diligence consistency in the judgments regarding this lot, they cannot benefit now from the doctrine of collateral estoppel. They are presumed to have waived this defense. The court, therefore, was free to rely on whichever judgment, *Sydoriak I* or *Sydoriak II*, if either, it concluded better pertained to and affected the matter before it.[7]

### III

The defendants also claim that regardless of whether the court was bound by the *Sydoriak I* court's conclusions regarding self-created hardship and the application of the purchase with knowledge rule, the trial court improperly concluded that those doctrines did not apply

---

[6] Although there are exceptions to this general rule; *Carnese* v. *Middleton*, supra, 27 Conn. App. 537; no such exceptions are present in this case.

[7] This is not to say that *Sydoriak I* is a nullity in its entirety, but rather that to the extent that *Sydoriak II* is inconsistent with *Sydoriak I*, *Sydoriak II* controls. "[W]hen a prior judgment is not relied upon in a pending action in which it would have had conclusive effect as res judicata, the judgment in that action is valid even though it is inconsistent with the prior judgment. It follows that it is this later judgment, rather than the earlier, that may be successfully urged as res judicata in a third action . . . . Indeed, the latter of the two inconsistent judgments is ordinarily held conclusive in a third action even when the earlier judgment was relied on in the second action and the court erroneously held that it was not conclusive." 1 Restatement (Second), Judgments § 15, comment (b), p. 143 (1982).

to the present case.[8] Additionally, they claim that the court improperly substituted its judgment for the board's with respect to safety concerns.

We first note our standard of review. "It is well settled that courts are not to substitute their judgment for that of the board, and that the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing . . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, review the action of the trial court. . . . In light of the existence of a statutory right of appeal from the decisions of local zoning authorities, however, a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty . . . ." (Citations omitted; internal quotation marks omitted.) *Kalimian* v. *Zoning Board of Appeals*, 65 Conn. App. 628, 630–31, 783 A.2d 506, cert. denied, 258 Conn. 936, 785 A.2d 231 (2001). Where the board has made a decision to grant or deny a variance, we review the trial court's judgment reversing that decision to determine whether the court properly concluded that the board's decision was arbitrary, illegal or an abuse of discretion. See *Stancuna* v. *Zoning Board of Appeals*, 66 Conn. App. 565, 568, 785 A.2d 601 (2001).

A

We first address the defendants' claim that the court improperly determined that the plaintiff's hardship was

---

[8] "One specific type of voluntarily assumed hardship is embodied in what has been termed 'the purchase with knowledge rule.' " *Kalimian* v. *Zoning Board of Appeals*, 65 Conn. App. 628, 632, 783 A.2d 506, cert. denied, 258 Conn. 936, 785 A.2d 231 (2001). "Under that rule, if a purchaser acquires property with knowledge of the applicable zoning regulations and later attempts to use that property in a manner that is proscribed by the regulations, the purchaser is barred from obtaining a variance." Id. The defendants' stated reason of "the purchase with knowledge rule" for denying the variance, therefore, is the same reason as the stated "self-created hardship."

not self-created and that the purchase with knowledge rule did not apply to the plaintiff's property.

The board denied the plaintiff's request for a variance pursuant to § 600.2 of the Prospect zoning regulations.[9] The main reasons offered by one of the two board members voting to deny the variance were that the hardship was self-created and that the purchase with knowledge rule applied to the plaintiff. On those two points, the court concluded that the board acted illegally because, as a matter of law, the hardship was not self-created and the purchase with knowledge rule was not applicable to the plaintiff's situation.

"It is well settled that [s]elf-inflicted or self-created hardship . . . is never considered proper grounds for a variance. . . . Accordingly . . . where the claimed

---

[9] Section 600.2 of the Prospect zoning regulations gives the board the power "to authorize in specific cases a variance from the terms of these Regulations because of practical difficulty or unnecessary hardship. A variance from the terms of these Regulations shall not be granted by the Zoning Board of Appeals unless and until the applicant demonstrates that:

"a. Special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other lands, structures, or buildings in the same district;

"b. Literal interpretation of the provisions of these Regulations would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of these Regulations; and

"c. Granting the variance requested will not confer upon the applicant any special privilege that is denied by these Regulations to other lands, structures, or buildings in the same [district].

"Nonconformity of neighboring land, structures, or buildings in the same district shall not be considered grounds for issuance of a variance. No permitted or nonconforming use of land, structures, or buildings in other districts shall be grounds for issuance of a variance."

That section of the zoning regulations is in harmony with General Statutes § 8-6 (a) (3), which "authorizes a zoning board to grant a variance only when two conditions are met: (1) the variance must be shown not to affect substantially the comprehensive zoning plan; and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162, 166–67, 855 A.2d 1044 (2004).

hardship arises from the applicant's voluntary act, a zoning board lacks power to grant a variance." (Citation omitted; internal quotation marks omitted.) *Abel* v. *Zoning Board of Appeals*, 172 Conn. 286, 289, 374 A.2d 227 (1977). "Where, however, the hardship is created by the enactment of a zoning ordinance and the owner of the parcel could have sought a variance, a subsequent purchaser has the same right to seek a variance and, if his request is supported in law, to obtain the variance." *Kulak* v. *Zoning Board of Appeals*, 184 Conn. 479, 482, 440 A.2d 183 (1981). This right is not lost merely because the subsequent purchaser takes with the *knowledge* that the current zoning regulations would prohibit the use. See *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 712, 535 A.2d 799 (1988). Rather, the nonconformity must be attributable to the purchaser or his predecessor in interest in order for the hardship to be considered self-created. Id.

As the court indicated in its decision, the record in this case reveals that the plaintiff's lot was created prior to the enactment of the zoning regulations. The record also reveals that neither the plaintiff nor his predecessor in interest was responsible for the later nonconformity of the lot; the boundaries of the lot were created when the town cut a road through a previously existing subdivision. It was the subsequent enactment of the zoning regulations, in 1959, and not any act by the plaintiff or his predecessor in interest, that rendered the lot nonconforming to those regulations. Those circumstances were beyond the plaintiff's control; see *Kalimian* v. *Zoning Board of Appeals*, supra, 65 Conn. App. 632; and are the type of circumstances that variances were designed to ameliorate. See *Adolphson* v. *Zoning Board of Appeals*, supra, 205 Conn. 713.[10] Because the

---

[10] The defendants rely on our Supreme Court's decision in *Abel* v. *Zoning Board of Appeals*, supra, 172 Conn. 286, in arguing that, because the plaintiff purchased the lot with the knowledge that it was nonconforming under the zoning regulations, his hardship was self-created. *Abel* and its progeny, however, make clear that the knowledge required for self-created hardship

board improperly concluded that the plaintiff's hardship was self-created, its action denying the variance on this ground was illegal.

## B

The defendants' final claim is that the court improperly substituted its judgment for that of the board regarding safety concerns when it concluded that the board's denial on this ground was arbitrary. Although it is true that, on factual questions, such as safety concerns, a reviewing court cannot substitute its judgment for that of the board, the evidence on which the board relies to support its decision on any such question must be substantial. *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, 55 Conn. App. 533, 539–40, 738 A.2d 1157 (1999).

One of the two board members voting to deny the variance cited safety concerns as his chief reason for his vote.[11] The record reveals that several individuals who own property near the plaintiff's lot testified as to their concerns regarding traffic and safety were a home to be built on the plaintiff's lot. Many of those concerns were based on the possibility that small children might reside in the house. The record, however, is devoid of any studies of traffic patterns or analyses of how a house built on the plaintiff's lot might contribute to the traffic and safety hazards that already exist or create

is knowledge that the property *never was intended* for the use the plaintiff seeks. See, e.g., id., 287 (lot reserved in subdivision plan, as park not as building lot); *Kalimian* v. *Zoning Board of Appeals*, supra, 65 Conn. App. 628 (plaintiff could not obtain variance for manufacturing business for lot in residential use district); *Spencer* v. *Zoning Board of Appeals*, 15 Conn. App. 387, 544 A.2d 676 (1988) (plaintiff could not obtain variance from minimum square footage requirement where plaintiff sought to subdivide lot). Such is not the case here because the lot, in its current state, predated the zoning regulations.

[11] This board member also cited as a reason to deny the variance that the plaintiff's lot could be put to uses other than residential. This claim, however, was argued neither before the trial court nor here.

new hazards. Because the board's decision was made without the benefit of any expert testimony, the court properly concluded that the decision was arbitrary as to this ground. The court, however, in remanding the case to the board, has permitted the board to place conditions on the variance it grants to the plaintiff so as to alleviate any safety concerns that may arise by virtue of the plaintiff's building a residence on his lot. We agree with the court that such conditions properly can be placed on any variance the plaintiff obtains.

The judgment is affirmed.

In this opinion the other judges concurred.